LAW OFFICES
**MORGAN, LEWIS & BOCKIUS LLP**
101 PARK AVENUE
NEW YORK, NEW YORK 10178
(212) 309-6000
*ATTORNEYS FOR PLAINTIFFS*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

E*TRADE SAVINGS BANK; AND     :
E*TRADE MORTGAGE CORPORATION,

          :

        Plaintiffs,

          :

    -against-

          :     CIVIL ACTION NO.:  1:07-cv-08065-LTS

NATIONAL SETTLEMENT AGENCY, INC.;
FAST TRACK TITLE AGENCY LLC.;       :    *ELECTRONICALLY FILED*
STEVEN M. LEFF; RACHEL M. LEFF; AND
RICHARD A. LEFF,          :

        Defendants.

          :

-------------------------------------- X

## PLAINTIFF E*TRADE'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT FAST TRACK'S MOTION TO DISMISS

MORGAN, LEWIS & BOCKIUS LLP
Kelly A. Moore (KM 4839)
Lisa M. Campisi (LC 1018)
101 Park Avenue
New York, New York 10178
212.309.6000

ATTORNEYS FOR PLAINTIFFS

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

I. The Complaint Passes Muster Under *Bell Atlantic* Because It Plausibly Suggests an Entitlement to Relief from Fast Track ...........................................................4

    A. The Complaint Alleges Sufficient Factual Information To Withstand A Motion To Dismiss Under The New Pleading Standard ........................................8

    B. *Bell Atlantic* has no bearing whatsoever on "information and belief" pleading ................................................................................................10

II. Plaintiffs Sufficiently Allege that NSA and Fast Track Are Alter Egos Of One Another ..................................................................................................11

III. The motion to dismiss each of E*TRADE's individual claims should be dismissed ......13

    A. The Complaint Sufficiently Alleges Breach Of Contract ...................................13

    B. The Complaint Sufficiently Alleges Conversion, Which May Be Pled On Information And Belief ................................................................................14

    C. The Complaint Sufficiently Alleges Breach of Fiduciary Duty ...........................15

    D. The Complaint Sufficiently Alleges Fraud .........................................................16

    E. The Complaint Sufficiently Alleges Negligence .................................................18

    F. The Complaint Sufficiently Alleges Unjust Enrichment ......................................18

    G. The Complaint Sufficiently Alleges Money Had and Received ...........................19

CONCLUSION .........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

<u>Page(s)</u>

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank Nat'l Ass'n,*
  731 F.2d 112 (2d Cir. 1984) .......................................................................19

*ABKCO Music, Inc. v. Harrisongs Music Ltd.,*
  722 F.2d 988 (2d Cir. 1983) .......................................................................15

*Adler v. Pataki,*
  185 F.3d 35 (2d Cir. 1999) ...................................................................15, 18

*Aktieselskabet AF v. Fame Jeans,*
  2007 WL 1655877 (D.D.C. June 7, 2007)....................................................10

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.,*
  2006 WL 278138 (S.D.N.Y. 2006) ..............................................................19

*Alter v. Bogoricin,*
  1997 WL 691332 (S.D.N.Y. 1997) ..............................................................13

*American Fuel Corp. v. Utah Energy Dev. Co.,*
  122 F.3d 130 (2d Cir. 1997) .......................................................................11

*Bell Atlantic Corporation v. Twombly,*
  127 S. Ct. 1955 (May 21, 2007) .......................................................3, 6, 8, 13

*Berrios v. State University of New York at Stony Brook,*
  2007 WL 2991461 (E.D.N.Y. Oct. 10, 2007) .................................................7

*Citadel Mgmt. Inc. v. Telesis Trust, Inc.,*
  123 F.Supp. 2d 133 (S.D.N.Y. 2000) ..........................................................14

*Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,*
  771 F. Supp. 600 (S.D.N.Y. 1991) ..............................................................12

*Conley v. Gibson,* 355 U.S. 41, 47 (1957).........................................................5

*Dover Ltd. v. A.B. Watley, Inc.,*
  2006 WL 2987054 (S.D.N.Y. 2006) ............................................................13

*Elektra Enter. Group v. Santangelo,*
  2005 WL 3199841 (S.D.N.Y. 2005) ............................................................10

*Erickson v. Pardus,*
  127 S. Ct. 2197 (June 4, 2007) .............................................................4, 5, 6, 7

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ................................................................................. 8

*Fantozzi v. Axsys Techs., Inc.*,
   2007 WL 2454109 (S.D.N.Y. August 20, 2007) .................................................. 15

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) ................................................................................ 11

*Golden Pacific Bancorp v. F.D.I.C.*,
   273 F.3d 509 (2d Cir.2001) ................................................................................. 18

*Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*,
   2007 WL 1701813 (S.D.N.Y. June 12, 2007) ...................................................... 12

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) ................................................................................ 7, 9

*In re Leslie Fay Cos. Sec. Litig.*,
   871 F. Supp. 686 (S.D.N.Y. 1995) ...................................................................... 10

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. June 14, 2007) ....................................... 5, 6, 7, 9

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Serv., Inc.*,
   295 F. Supp. 2d 366 (S.D.N.Y. 2003) ................................................................. 13

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
   108 F.3d 1531 (2d Cir. 1997) .............................................................................. 11

*Kurtzman v. Bergstol*,
   40 A.D.3d 588 (2d Dep't 2007) ........................................................................... 15

*Local 812 GIPA v. Canada Dry Bottling Co. of New York*,
   1999 WL 301692 (S.D.N.Y. 1999) ...................................................................... 12

*Maverick Recording Co. v. Goldshteyn*,
   2006 WL 2166870 (E.D.N.Y. 2006) .................................................................... 11

*Nationwide Cellular Service, Inc. v. American Mobile Communications, Inc.*,
   1991 WL 233284 (S.D.N.Y. 1991) ........................................................... 14, 17, 18

*Old Republic Insurance Co. v. Hansa World Cargo Serv., Inc.*,
   170 F.R.D. 361 (S.D.N.Y. 1997) ......................................................................... 12

*R.H. Damon & Co. v. Softkey Software Products, Inc.*,
   811 F. Supp. 986 (S.D.N.Y. 1993) ...................................................................... 14

*S.W. v. Warren*,
   2007 WL 4115949 (S.D.N.Y November 16, 2007) ................................................ 8

*Schlick v. Penn-Dixie Cement Corp.,*
    507 F.2d 374 (2d Cir. 1974) ...................................................................17

*Sofi Classics S.A. Dec. C.V. v. Hurowitz,*
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) ...........................................18, 19

*Sterling Interiors Group, Inc. v. Haworth, Inc.,*
    1996 WL 426379 (S.D.N.Y. 1996) .....................................................17

*Strojmaterialintorg v. Russian Am. Commercial Corp.,*
    815 F. Supp. 103 (E.D.N.Y. 1993) .......................................................20

*TON Services, Inc. v. Qwest Corporation,*
    493 F.3d 1225 (10th Cir. 2007) ..............................................................7

*Tierney v. Omnicom Group Inc.,*
    2007 WL 2012412 (S.D.N.Y. July 11, 2007) .....................................20

*U2 Home Entertainment, Inc. v. Kylin TV, Inc.,*
    2007 WL 2028108 (E.D.N.Y. July 11, 2007) .......................................7

*U.S. v. International Longshoremen's Ass'n,*
    2007 WL 3196679 (E.D.N.Y. November 1, 2007) ................................7

*Weaver v. Chrysler Corp.,*
    172 F.R.D. 96 (S.D.N.Y. 1997) ............................................................12

*Zaro Licensing, Inc. v. Cinmar, Inc.,*
    779 F. Supp. 276 (S.D.N.Y. 1991) .......................................................16

## LAW REVIEW ARTICLES

Keith Bradley, *Pleading Standards Should Not Change After* Bell Atlantic v. Twombly,
    102 Nw. U. L. Rev. Colloquy 117, 118 (2007) ...................................8

Scott Dodson, *Pleading Standards After* Bell Atlantic Corp. v. Twombly,
    93 Va. L. Rev. In ...................................................................................8

## PLAINTIFF E\*TRADE'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT FAST TRACK'S MOTION TO DISMISS

Plaintiffs E\*TRADE Savings Bank and E\*TRADE Mortgage Corporation, collectively referred to herein as "E\*TRADE," respectfully submit this Memorandum of Law in Opposition to defendant Fast Track Title Agency, LLC's, ("Fast Track") motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Fast Track's motion should be denied. If for any reason the Court elects not to deny defendant's motion *in toto*, E\*TRADE respectfully requests leave to amend its complaint.

## INTRODUCTION

This case arises from the following simple facts: E\*TRADE gave over $3 million to defendants, who are a closing agency, a title insurance agency, and the individual owners and operators of those agencies. Instead of passing along this money to benefit E\*TRADE's customers – who wished to use the funds to purchase homes or refinance their mortgages – defendants spirited away with the money. E\*TRADE now requests a judgment from the Court in order to recoup these funds, which E\*TRADE had to pay in order to make good on its obligations to those customers.

Defendants National Settlement Agency, Inc. ("NSA") and Fast Track are domestic companies, both based in New York. Complaint ¶¶ 3-4. Defendant Steven M. Leff is the president of NSA, as well as an officer and employee of Fast Track. He resides at 15 Anvil Ct. 15, East Hampton, NY 11937. *Id*. at ¶ 6. His wife Rachel M. Leff is also an officer and employee of Fast Track, and resides at the same East Hampton address. *Id*. at ¶ 7. His brother Richard A. Leff, an attorney licensed in the State of New York, is likewise an employee and officer of both NSA and Fast Track. *Id*. at ¶ 8.

E*TRADE is in the business of, among other things, funding residential mortgages. *Id.* at ¶ 11. In connection with the funding of certain mortgages in the spring and summer of 2007, NSA acted as closing agent, while Fast Track acted as title insurance agent. *Id.* at ¶¶ *12-13. Given the close unity and joint nature of these two companies and three family members, Steven Leff, Rachel Leff, and Richard Leff essentially acted as closing agents *and* as title insurance agents via their two corporations. *Id.* at ¶¶ *5, *12-13.

When a mortgage loan closes, the closing agent is legally obligated to disburse specific funds – which the lending bank transfers in trust – to certain escrow accounts which the closing agent is supposed to maintain. *Id.* at ¶ 14. At that point, the title insurance agent is legally obligated to (1) place title insurance on the subject properties, and (2) ensure that the lender's loans are senior to other encumbrances on the subject properties. *Id.*

In the spring and summer of 2007, though, none of this went according to plan because of the fraudulent activities of the Leffs, working through their conduit companies Fast Track and NSA. *Id.* at ¶ 15. At no less than fifteen mortgage closings, defendants converted over $2.5 million of E*TRADE's funds that it had wired into escrow accounts; funds which defendants were supposed to disburse to E*TRADE's borrowers and other designated payees. *Id.* at ¶ 15, 17. Rather than disburse the funds as required, defendants secreted the loan proceeds for their own personal uses. *Id.* at ¶ 15. Indeed, the conduct was so egregious that the government has filed a criminal complaint against Steven M. Leff, accusing him of embezzlement, partially arising from his theft of E*TRADE's funds as alleged in the complaint. *Id.*

E*TRADE was left to clean up the mess. It had to pay out of pocket to satisfy obligations to the borrowers, and it also incurred great expense in order to right the Leffs'

wrongs. *Id.* at ¶ 16. E*TRADE's total losses from defendants' wrongful conduct exceed $3 million. *Id.*

In September 2007, E*TRADE filed a complaint against Fast Track, NSA, and the Leffs, demanding a money judgment from all defendants and an injunction against all defendants, based on the following seven causes of action: (Count I) Breach of Contract; (Count II) Conversion; (Count III) Breach of Fiduciary Duty; (Count IV) Fraud; (Count V) Negligence; (Count VI) Unjust Enrichment; and (Count VII) Money Had and Received.

## ARGUMENT

Fast Track principally argues that the complaint must be summarily dismissed because earlier this year the Supreme Court decided, in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (May 21, 2007), that the plaintiffs' allegations in that case of "parallel conduct" amongst the defendants did not adequately state a claim of illegal antitrust conspiracy under Section 1 of the Sherman Act and, therefore, the complaint did not "render plaintiffs' entitlement to relief plausible." 127 S. Ct. at 1973 n.14. As discussed below, whatever impact *Bell Atlantic* may have on pleading requirements (as narrowed and explained by subsequent Supreme Court and Second Circuit case law), E*TRADE's complaint is more than sufficient to withstand the present motion to dismiss. Fast Track's more specific objections to the seven causes of action and the alter ego allegations similarly fall flat, and therefore the present motion should be denied.

## I.    **The Complaint Passes Muster Under *Bell Atlantic* Because It Plausibly Suggests an Entitlement to Relief from Fast Track**

Fast Track grossly overstates *Bell Atlantic's* impact on pleading standards. Moreover, Fast Track inexplicably fails to even mention two important opinions, both binding on this court and decided after *Bell Atlantic*. These cases establish that *Bell Atlantic* is not as radical as Fast Track would wish this Court to believe.

*Bell Atlantic* was a complex antitrust class action, in which plaintiffs alleged an illegal conspiracy among the "Baby Bells" to inhibit the growth of third-party competitors and to refrain from competing among themselves. The Court held that, even though plaintiffs had adequately pled parallel conduct amongst the defendants, this alone could not adequately state a claim for conspiracy under Section 1 of the Sherman Act. The Court was careful to clarify that it was "not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face," 127 S. Ct. at 1974, and that "a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . ." *Id.* at 1964. Without even considering the subsequent case law, then, Fast Track's main argument for dismissal begins to unravel: *Bell Atlantic* merely requires that the complaint "give the defendant fair notice of what the claim is," which the E*TRADE complaint plainly does. 127 S. Ct. at 1964.

Moreover, subsequent decisions confirms that Fast Track at best overstates the intended and actual impact of *Bell Atlantic*. First, barely two weeks after deciding *Bell Atlantic*, the Supreme Court issued *Erickson v. Pardus,* 127 S. Ct. 2197 (June 4, 2007), a case through which the Court set out to reign in any potential unintended effects of *Bell Atlantic*. In *Erickson*, a prisoner filed a *pro se* suit against prison officials, alleging that they did not permit him access to necessary hepatitis medication. 127 S. Ct. at 2197-199. In reversing the Tenth Circuit's dismissal of the complaint, *Erickson* reaffirmed that the basic standard of Fed. R. Civ. P. 8 remains intact, notwithstanding *Bell Atlantic*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atlantic*, 127 S. Ct. at 1964, in turn quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Nowhere in the opinion does the *per curiam* Court mention the "plausibility" language.

      Another essential case which Fast Track inexplicably and completely overlooks is *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. June 14, 2007), representing the Second Circuit's interpretation of, and attempt to reconcile, *Bell Atlantic* and *Erickson*. Like *Erickson*, the *Iqbal* court held that the plaintiff's allegations of mistreatment at the hands of government officials set forth in the complaint sufficed, with a few exceptions, "to defeat the Defendants' attempt to terminate the lawsuit at a preliminary stage." 490 F.3d at 178. *Iqbal* read the two Supreme Court cases together to mean that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id.* at 157-158. Moreover, the court absolutely rejected the idea that *Bell Atlantic* imposed any type of "heightened pleading requirement" on lower courts and litigants. *Id.* at 158.

      *Iqbal* is particularly notable for three of the court's observations: first, it notes that *Bell Atlantic* "did not disclaim its prior statement that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" *Id.* at 157 (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993)). Second, *Iqbal* affords great weight to *Erickson*:

> [J]ust two weeks after issuing its opinion in *Bell Atlantic*, the Court cited it for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only "'give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atlantic's* quotation from *Conley*) . . . .

*Id.* Finally, and most significantly, if a complaint does not satisfy the new pleading standard, the court said that the appropriate procedure is not dismissal; rather, "some elements of a plaintiff's claims might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement" at a later time. *Id.* at 158 (citing Fed. R. Civ. P. 12(e)). Therefore, in order to afford either side an opportunity to learn the necessary facts, the district court may "consider exercising its discretion to permit some limited and tightly controlled reciprocal discovery so that a defendant may probe for amplification of a plaintiff's claims and a plaintiff may probe such matters as a defendant's knowledge of relevant facts and personal involvement in challenged conduct." *Id.*

District courts within the Second Circuit have now had some opportunity to digest and make sense of *Bell Atlantic, Erickson* and *Iqbal*. In an October 10 decision, the Eastern District of New York succinctly summarized the collective and limited impact of these cases as follows:

> The "retirement" of *Conley's* language, *see Bell Atlantic Corp.,* 127 S.Ct. at 1969, is not a wholesale rejection of the general pleading rules to which federal courts have become accustomed. Instead, it is a rejection of *Conley's* "negative gloss" on the accepted pleading standard that once a claim is stated, it may be supported by any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp.,* 127 S.Ct. at 1969. Indeed, shortly after its decision in *Bell Atlantic,* the Court reiterated that the pleading of specific facts in support of a complaint is not necessary. Instead, a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."

*Berrios v. State University of New York at Stony Brook*, 2007 WL 2991461, *3 (E.D.N.Y. Oct. 10, 2007)[1] (quoting *Erickson*, 127 S.Ct. at 2200). Moreover, "[t]he 'plausibility' language

---

[1]    Indeed, many New York district court cases have quoted the limiting language from *Erickson* and *Iqbal*, which makes Fast Track's failure to cite either one particularly appalling. *See, e.g., U.S. v. International Longshoremen's Ass'n* 2007 WL 3196679, *28 (E.D.N.Y. November 01, 2007) (under *Erickson* and Rule 8(a)(2), "[s]pecific facts are not necessary"); *U2 Home Entertainment, Inc. v. Kylin TV, Inc.*, 2007 WL 2028108, *5 (E.D.N.Y. July 11, 2007) (denying defendant's motion to dismiss because under *Erickson*, "a

used by the Supreme Court in *Bell Atlantic*, has not been interpreted by the Second Circuit to require a 'universal standard of heightened fact pleading,' but to require a complaint to 'amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Id.*, citing *Iqbal*, 490 F.3d at 158. *See also U2 Home Entertainment, Inc. v. Kylin TV, Inc.*, 2007 WL 2028108, *5 (E.D.N.Y. July 11, 2007) ("The Second Circuit has not interpreted [*Bell Atlantic*] to require a 'universal standard of heightened fact pleading;' rather, it requires a 'flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*" (quoting *Iqbal*)). The Tenth Circuit has likewise recognized that *Bell Atlantic* is not nearly as radical as Fast Track would have this Court believe. *TON Services, Inc. v. Qwest Corporation*, 493 F.3d 1225, 1236, n.3 (10th Cir. 2007) ("even under the new 'plausibility' regime, a complaint need not provide 'specific facts'").

Significantly, *Berrios* also emphasizes what *Bell Atlantic* did *not* change. "In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party." *Berrios*, 2007 WL 2991461 at *3.[2] Furthermore, on a 12(b)(6) motion, the issue is still "not whether a plaintiff will ultimately prevail"; rather, it is "whether the claimant is entitled to offer evidence to support the claims." *S.W. v. Warren*, 2007 WL 4115949 (S.D.N.Y November 16, 2007) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)); *see also Bell Atlantic*, 127 S. Ct. at 1965 ("[a]sking for plausible grounds to infer [unlawful activity] does not impose a probability requirement at the pleading stage; it simply calls for

---

complaint need only give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests'").

[2]    Fast Track's cited cases acknowledge as much. *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007).

enough fact to raise a reasonable expectation that discovery will reveal evidence of [the unlawful activity]").

**A.    The Complaint Alleges Sufficient Factual Information To Withstand A Motion To Dismiss Under The New Pleading Standard**

*Bell Atlantic* in no way compels dismissal of this case.  It bears nothing in common factually with this case, and the face of E*TRADE's complaint satisfies the pleading standard enunciated therein.

Fast Track argues that *Bell Atlantic* alone warrants dismissal.  But Fast Track is wrong because (aside from merely parroting the "plausibility" language from *Bell Atlantic*, as Fast Track constantly does) *Bell Atlantic* cannot be divorced from its antitrust confines.

Fast Track fails to realize or acknowledge that the specific context of *Bell Atlantic* is important, in terms of its subject matter and complexity.  *See* Keith Bradley, *Pleading Standards Should Not Change After* Bell Atlantic v. Twombly, 102 Nw. U. L. REV. COLLOQUY 117, 118 (2007) ("we must read *Twombly* in the context of antitrust law").  The Court recognized that it would have been an extremely expensive case to litigate, since discovery would have involved the exchange of countless documents, and the depositions of officers from several very large corporations.  *See Bell Atlantic*, 127 S. Ct. at 1967 n.6 ("determining whether some illegal agreement may have taken place between unspecified persons at different ILECs (each a multibillion dollar corporation with legions of management level employees) at some point over seven years is a sprawling, costly, and hugely time-consuming undertaking"); *see also* Scott Dodson, *Pleading Standards After* Bell Atlantic Corp. v. Twombly, 93 Va. L. Rev. In Brief 121 (2007) ("the need for additional fact pleading is particularly necessary in antitrust litigation because antitrust discovery—especially antitrust class action discovery—can be potentially massive and expensive"); *Iqbal*, 490 F.3d at 157 ("These concerns provide some basis for

believing that whatever adjustment in pleading standards results from *Bell Atlantic* is limited to cases where massive discovery is likely to create unacceptable settlement pressures"). Less complex cases, such as this, do not present the same issues – either in terms of complexity or expense – compared with litigating a massive antitrust class action.[3]

Moreover, the factual and legal complexity of *Bell Atlantic* contrasts sharply with the simplicity of *Erickson*. The straightforwardness of the present case warrants the same result as *Erickson*, with which this case bears much more in common than *Bell Atlantic* (notwithstanding that *Erickson* involved a *pro se* litigant, a fact which the Court considered in that case): E*TRADE delivered funds to Fast Track for the latter to hold in escrow and to distribute according to E*TRADE's instructions. Fast Track, in conjunction with the other defendants, instead absconded with these funds. The foregoing facts are clearly set forth in the complaint, and therefore, the Court should deny Fast Track's motion to dismiss, as did the *Erickson* court.

When plucked from its factual context, *Bell Atlantic* has no bearing on this case, because as explained in detail below, "[w]hether stated using *Conley*-like language or *Bell Atlantic-Iqbal* plausibility language, plaintiff [E*TRADE's] claim that the defendants [are liable for the seven causes of action enumerated in the complaint] is not implausible, and [it] may be able to prove facts to support such a claim." *Makas v. Orlando*, 2007 WL 4162826, *1 (S.D.N.Y. November 21, 2007).

Fast Track quotes from three haphazardly chosen paragraphs, plucked from the complaint and then summarily concludes that the entire complaint (all 54 paragraphs) fails under *Bell Atlantic*. *See* Def. Memo. of Law in Support of Motion to Dismiss ("Memo. of Law") at 4. Fast

---

[3]  Fast Track's reliance on *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007), is misplaced for identical reasons: that case is also plainly limited to its highly technical antitrust context, in which plaintiffs failed to adequately plead, *inter alia*, that several enormous companies "conspired to engage in anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act" and "unilaterally monopolized and attempted to monopolize the maintenance market for their elevators." *Id.*

Track apparently believes that the entire complaint fails because E*TRADE did not support *all*

of its claims in these three randomly selected paragraphs. Because the Court will obviously

consider the complaint in its entirety, this argument need not be considered. *See In re Leslie Fay*

*Cos. Sec. Litig.*, 871 F. Supp. 686, 699 (S.D.N.Y. 1995) (defendant "fails to consider the

amended complaint as a whole").

**B.    *Bell Atlantic* has no bearing whatsoever on "information and belief" pleading**

Contrary to Fast Track's repeated assertions, E*TRADE's complaint does not fail simply

because certain paragraphs are based on "information and belief." A plaintiff must indicate

grounds for allegations made on information and belief only for claims subject to a heightened

standard. *Maverick Recording Co. v. Goldshteyn*, 2006 WL 2166870, *4-5 (E.D.N.Y. 2006)

("Since Rule 8 standards apply to the instant claims, plaintiffs may plead on information and

belief without alleging additional facts to show the source of their information"). Therefore,

E*TRADE's complaint withstands the motion to dismiss, notwithstanding that portions are

alleged on information and belief. *Id.*

Moreover, neither of Fast Track's cited cases, *Bell Atlantic* and *Aktieselskabet AF v.*

*Fame Jeans*, 2007 WL 1655877 (D.D.C. June 7, 2007), supports its argument here. Nowhere

does *Bell Atlantic* condemn "information and belief" pleading, which has long been held

"sufficient to satisfy federal notice pleading under Fed.R.Civ.P. 8(a)." *Elektra Enter. Group v.*

*Santangelo*, 2005 WL 3199841, at *7 (S.D.N.Y. 2005). Although a portion of the complaint

dismissed in *Bell Atlantic* was based on information and belief, the Court did not hold that the

complaint fell short of the new pleading standard *because* it was pled in this manner. 127 S, Ct.

at 1971-74. The Court drew its holding much more narrowly: although plaintiffs' complaint

successfully alleged "parallel conduct" amongst the defendants, this allegation did not

adequately state a claim for illegal conspiracy under Section 1 of the Sherman Act. *Id.*

Similarly, in *Aktieselskabet*, portions of the complaint happened to be based on information and belief, but the D.C. District Court rejected the claim for a wholly unrelated reason: because plaintiff failed to previously raise the claim before the Trademark Trial and Appeal Board. 2007 WL 1655877 at *14-15.

**II.    Plaintiffs Sufficiently Allege that NSA and Fast Track Are Alter Egos Of One Another**

The standards for alleging an alter ego claim are as follows: E*TRADE's common law claims arise under this Court's diversity jurisdiction, so the choice-of-law rules of the forum state apply; here, the forum state is New York. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). Under New York's choice-of-law rules, the controlling law with respect to the entity whose veil is to be pierced is the law of the state of its incorporation. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Because Fast Track is a New York limited liability company, New York law applies in this case. Under New York law, two companies act as "alter egos" for one other if: (1) one company exercised complete domination over the other in respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury. *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir. 1997).

Moreover, because it is not necessary to allege fraud in order to pierce the corporate veil, the court must judge E*TRADE's alter ego allegations by the liberal notice pleading standards of Fed. R. Civ. P. 8(a), as opposed to the more stringent pleading standards of Fed. R. Civ. P. 9(b). *See Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 771 F. Supp. 600, 608 (S.D.N.Y. 1991).[4]

---

[4]    Recent cases illustrate that *Bell Atlantic* did not alter this rule. *See Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, 2007 WL 1701813 (S.D.N.Y. June 12, 2007) (under Rule 9(b) "allegations of dominance

Finally, contrary to Fast Track's contention, it is "simply wrong" to say that alter ego status cannot be alleged on information and belief. *Local 812 GIPA v. Canada Dry Bottling Co. of New York*, 1999 WL 301692, *8 (S.D.N.Y. 1999) (denying motions to dismiss)[5]. As explained in *Local 812 GIPA*:

> In the cases [defendant] cites in support of this proposition, dismissal of the complaint was warranted either because the claim was subject to a heightened pleading standard, *see Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (claim under N.Y. Consumer Protection Act must be plead with specificity), or because the complaint contained only a conclusory allegation of alter ego status, *see Old Republic*, 170 F.R.D. at 374, and not because the allegations were based "upon information and belief."

*Id.* Note that in this passage, *Local 812 GIPA* explicitly distinguishes *Old Republic Insurance Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997), a case upon which Fast Track heavily relies. *See* Memo. of Law at 9-10, 15.

Similarly, the present case is distinguishable from *Old Republic*. The complaint here alleges that officers and employees of Fast Track and NSA are related by blood and by marriage; that they share an address; that the two businesses serve closely related functions in the mortgage industry and acted in that capacity at the time they caused injury to E*TRADE; that the Leffs in effect acted as closing agents *and* as title insurance agents via the two corporations; that the two companies were able to abscond with E*TRADE's money because they were alter egos of one another; and that "NSA and Fast Track are each alter egos of the other by virtue of their common ownership and unity of interest." *See* Complaint at ¶¶ 3-8, 12-14.

This list of facts flatly contradicts Fast Track's assertion that the complaint sets forth only "bare, conclusory allegations." Memo. of Law at 7. "At this preliminary stage, the Plaintiffs

---

and control . . . are not subject to the heightened pleading standard, even where the veil-piercing claim is based on an allegation that the corporate form was abused to perpetrate fraud").

[5]    Also, as explained above, nowhere does *Bell Atlantic* condemn pleading on information and belief, whether in regards to corporate alter ego status or any other claim.

have no way of knowing whether [defendant alter egos] observed corporate formalities," *Dover Ltd. v. A.B. Watley, Inc.*, 2006 WL 2987054, *29 (S.D.N.Y. 2006), but nevertheless when viewed together, the foregoing passes muster under the *American Fuel Corp.* two-prong test, and therefore E*TRADE should be permitted to proceed in order to discover additional facts "consistent with the allegations of the complaint." *Bell Atlantic Corp.*, 127 S.Ct. at 1969. Counter to Fast Track's suggestion, at this early stage of the case a plaintiff need not eliminate all other possible scenarios that could potentially explain away the interrelated circumstances amongst the entities as mere coincidence. *See Dover Ltd.*, 2006 WL 2987054 at *30 (denying motion to dismiss the alter ego claims because the facts "suggest a high degree of interrelatedness among the [two] Companies"); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Serv., Inc.*, 295 F. Supp. 2d 366, 378 (S.D.N.Y. 2003) (rejecting alleged alter ego's motion to dismiss because it "ignore[d] the substance of the [complaint]" and "impose[d] too high a burden on the plaintiff's pleading"); *see also Alter v. Bogoricin*, 1997 WL 691332, *5 (S.D.N.Y. 1997) ("plaintiff's alter-ego allegations are judged by the liberal notice pleading standards of Fed. R. Civ. P. 8(a)").

**III.    The motion to dismiss each of E*TRADE's individual claims should be dismissed**

   **A.    The Complaint Sufficiently Alleges Breach Of Contract**

Fast Track's half-hearted attempt to have this claim dismissed utterly fails. "To adequately state a claim for breach of contract a plaintiff must allege: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." *R.H. Damon & Co. v. Softkey Software Products, Inc.*, 811 F. Supp. 986 (S.D.N.Y. 1993).

Fast Track cites no authority for the proposition that ¶ 19 of the complaint – "Defendants contracted with E*TRADE to act as the closing agents for E*TRADE in connection with the

above-specified loan transactions" – insufficiently alleges the first or latter half of the third elements under *R.H. Damon.* The complaint obviously alleges that *all* named defendants contracted with E*TRADE and thereafter breached. *See Nationwide Cellular Service, Inc. v. American Mobile Communications, Inc.*, 1991 WL 233284, *9 (S.D.N.Y. 1991) ("where the collective term 'defendants' is used, the complaint makes clear that the allegations refer to all defendants"). Paragraphs 19-22 of the complaint plainly set forth the other elements for breach of contract. Fast Track's weak use of *Bell Atlantic* as a crutch to claim otherwise is transparent.

**B.      The Complaint Sufficiently Alleges Conversion, Which May Be Pled On Information And Belief**

Conversion comprises three elements: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights. *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F.Supp. 2d 133, 147 (S.D.N.Y. 2000). Paragraphs 15, 27 and 28 of the complaint clearly form the factual bases for each of these three elements.

Fast Track makes much ado about irrelevant issues regarding this cause of action. First, as noted above, nowhere does *Bell Atlantic* prohibit plaintiffs from pleading on information and belief, nor does Fast Track cite any authority which would specifically prohibit pleading conversion in such a manner. Second, also as illustrated above, the complaint sufficiently pleads alter ego liability. Third, the complaint clearly alleges that defendants exercised unauthorized dominion over the funds: "Rather than disburse the funds as required, defendants secreted all or a portion of the loan proceeds for their own personal uses." Complaint at ¶ 15. Indeed, one would be hard pressed to find a more illustrative example of an exercise of unauthorized dominion.

Finally, "Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to plead two or more statements of a claim, even within the same count, regardless of consistency." *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (internal cite omitted). The rule "offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss or for summary judgment." *Id. See also Fantozzi v. Axsys Techs., Inc.*, 2007 WL 2454109, *7-8 (S.D.N.Y. August 20, 2007) (denying motion to dismiss plaintiff's conversion claim using same rationale under Rule 8(e)(2)). Hence, E*TRADE's conversion claim is properly pled in the alternative under Rule 8(e)(2). E*TRADE's complaint does not ask that it "be paid twice," as Fast Track alleges. Memo. of Law at 13. It requests to recoup losses attributable to defendants *once*, based on any of the causes of action. *See* complaint at pg. 10.

### C.    The Complaint Sufficiently Alleges Breach of Fiduciary Duty

A plaintiff successfully pleads breach of fiduciary duty by pleading (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages that were directly caused by the defendant's misconduct. *See Kurtzman v. Bergstol*, 40 A.D.3d 588 (2d Dep't 2007). Paragraphs 29-34 do so here. As to the first element, agents always owe fiduciary duties to their principals, *see, e.g., ABKCO Music, Inc. v. Harrisongs Music Ltd.*, 722 F.2d 988, 994 (2d Cir. 1983), and several paragraphs of the complaint allege that Fast Track acted as title insurance agent on behalf of E*TRADE. As to the second element, the complaint alleges that Fast Track engaged in misconduct by (1) "converting the funds that had been wired into their escrow accounts," (2) "not ensuring that E*TRADE's loans would not be subordinate to other obligations," (3) "not redrawing dishonored checks, or checks that were never delivered to the designated payees, upon good funds," and (4) "failing to supervise those under their control who contributed to E*TRADE's losses." Complaint at 31-33. Finally, as to the third element, ¶ 34

alleges that the foregoing list of misconduct caused injury to E*TRADE. Fast Track does not and cannot seriously argue that its actions did not proximately cause losses to E*TRADE. The claim is properly pled.

### D. The Complaint Sufficiently Alleges Fraud

A claim for fraud pleads the following elements: (1) an express representation of a material fact; (2) that this representation was false; (3) that the representation was made with the intent to defraud; (4) that the plaintiff reasonably relied upon this representation; and (5) that the plaintiff suffered damages as a result. *See Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991). Paragraph 37 of the complaint pleads the first element. ("Upon information and belief, defendants thereby knowingly and intentionally misrepresented to E*TRADE that they would disburse funds as instructed, and knowingly and intentionally misrepresented to E*TRADE that E*TRADE would not be subordinate to other lenders.") Paragraph 15 pleads the second element. ("Rather than disburse the funds as required, defendants secreted all or a portion of the loan proceeds for their own personal uses. . . .") Paragraphs 37-38 plead the third element. Paragraphs 39 and 40 plead the fourth and fifth elements, respectively. The fraud claim is therefore sufficiently pled.

Fast Track's myriad attacks on the fraud claim are made up of nothing more than misstatements of the law and irrelevancies. First, the claim is not subject to dismissal simply because it does not parse out exactly who said what at precisely what time. "[W]hile Rule 9(b) ordinarily requires that the complaint apprise *each* defendant of the nature of his alleged participation in the fraud, such specificity is not necessary when the defendants are insiders or affiliates . . . ." *Nationwide Cellular Service, Inc.*, 1991 WL 233284 at *6. Moreover, misrepresentations made in a written document "satisfy the rule's requirement as to identifying the 'when, where, and what' of the alleged misrepresentations." *Id.* Here, it has been alleged

that the two defendant corporations are alter egos of one another and that the three individual defendants – all related by blood or marriage – operate both companies. The insider-affiliate exception therefore applies. *See id.* ("Thus, the fact that the Nationwide complaint occasionally attributes misrepresentations to 'the defendants' without distinguishing between the various alleged perpetrators of the fraud, is not fatal to Nationwide's pleading").

Next, under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Therefore, Fast Track's argument that scienter is insufficiently pled fails. "At this point in the proceedings, that information is 'peculiarly within the opposing party's knowledge,' and as such, need not be pled in detail, even under the heightened requirements of Rule 9(b)." *Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379, *7 (S.D.N.Y. 1996) (quoting *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974)). The complaint alleges that E*TRADE gave over $3 million to defendants who had a fiduciary duty to pass along this money to E*TRADE's customers, but instead defendants ran off with it. What more would Fast Track need to know regarding its fraudulent behavior? At this early stage, these facts suffice to permit the claim to proceed to discovery. *See id.* (denying motion to dismiss claim of fraud because complaint alleged enough factual basis).

Fast Track is also wrong that fraud allegations cannot be based on information and belief. In fact, "Rule 9(b) recognizes the need for and permits such pleading when the matters stated are particularly within the opposing parties' knowledge" – such as information about stock ownership and management positions – or when they relate to scienter, "which is not subject to the more exacting particularity requirements of other components of fraud allegations." *Nationwide Cellular Service*, 1991 WL 233284 at *7 (cites omitted). The portions of this cause

of action predicated on information and belief fall into this category, and therefore the form of pleading is proper.

Fast Track bafflingly claims that the complaint does not specify "what damages were sustained by them as the specific result of the alleged fraud." Memo. of Law at 17. But ¶ 40 plainly states damages are "no less than $3 million." Finally, as explained above, "Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to plead two or more statements of a claim, even within the same count, regardless of consistency." *Adler*, 185 F.3d 35 at 41.

### E.    The Complaint Sufficiently Alleges Negligence

The face of the complaint contains all of the requisite facts to sustain this cause of action, and Fast Track fails to clearly explain why it believes otherwise. *See* complaint ¶¶ 41-44. Furthermore, the other claims do not preclude one for negligence because, as explained above, Rule 8(e)(2) permits plaintiffs to plead in the alternative. *Adler*, 185 F.3d 35 at 41.

### F.    The Complaint Sufficiently Alleges Unjust Enrichment

To plead an unjust enrichment claim under New York law, a plaintiff must allege that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances are such that in equity and in good conscience the defendant should return the money or property to the plaintiff. *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001). The complaint does so, at ¶¶ 45-49.

Moreover, although it is generally true that "no claim for unjust enrichment lies where the subject matter of the claim is covered by a written contract[,] . . . this rule applies only when the existence of a contract governing the transaction in question is undisputed." *Sofi Classics S.A. Dec. C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006). This exception applies to the present case, as Fast Track contends (1) that the complaint's claim for breach of contract fails because "it does not state that a contract with Fast Track exists," Memo. of Law at 11, and (2)

that Fast Track would not be liable for NSA's breach of contract because it is not that company's alter ego. Because Fast Track disputes the contract claim, unjust enrichment may coexist as an alternate cause of action. *Id.* (denying motion to dismiss unjust enrichment claim because "the parties disagree as to whether the [agreements] are binding on the Defendants as 'alter egos' of the signatories to the Agreements").

### G.    The Complaint Sufficiently Alleges Money Had and Received

To plead a claim for money had and received, a plaintiff must allege that: (1) the defendant received money belonging to the plaintiff; (2) the defendant benefited from the receipt of money; and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank Nat'l Ass'n,* 731 F.2d 112, 125 (2d Cir. 1984). The requisite facts all appear at ¶¶ 50-54 of the complaint, and therefore this claim withstands the motion to dismiss as well. *See Allied Irish Banks, P.L.C. v. Bank of America, N.A.,* 2006 WL 278138, *14 (S.D.N.Y. 2006) (permitting claim for money had and received to proceed, notwithstanding that complaint alleged only that "Defendants allegedly received payment from Plaintiff in the form of fees; Defendant benefited from the money, and Defendants should not be permitted to keep money that they obtained through a fraudulent scheme").

Notably, Fast Track tacitly concedes that the claim for money had and received is not duplicative of the contract claim. *See* Memo. of Law at 20.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied. If for any reason the court does grant any portion of the motion, E*TRADE respectfully requests leave to amend its complaint. *See Strojmaterialintorg v. Russian Am. Commercial Corp.,* 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (plaintiff granted "leave to amend its complaint to allege specific facts

supporting a piercing of the corporate veil"); *Tierney v. Omnicom Group Inc.*, 2007 WL 2012412, *3 (S.D.N.Y. July 11, 2007) (Swain, J.) ("Defendant's motion to dismiss is granted as to Plaintiff's Fourth Cause of Action, without prejudice to repleading").

Dated: December 7, 2007

    Respectfully submitted,

    _____

    MORGAN, LEWIS & BOCKIUS LLP
    Kelly A. Moore (KM 4839)
    Lisa M. Campisi (LC 1018)
    101 Park Avenue
    New York, New York 10178
    212.309.6000

    ATTORNEYS FOR PLAINTIFFS
    E*TRADE Savings Bank and E*TRADE Mortgage Corporation