UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                      :
E*TRADE SAVINGS BANK and E*TRADE                      :
MORTGAGE CORPORATION                                  :        ECF Case
                                                      :
                    Plaintiffs,                       :        07 Civ. 8065 (LTS/GWG)
                                                      :
          v.                                          :
                                                      :
NATIONAL SETTLEMENT AGENCY, INC.;                     :
FAST TRACK TITLE AGENCY LLC,                          :
STEVEN M. LEFF; RACHEL M. LEFF;                       :
and RICHARD A. LEFF,                                  :
                                                      :
                    Defendants.                       :
-----------------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANT FAST TRACK TITLE AGENCY LLC'S
### MOTION TO DISMISS AMENDED COMPLAINT

**REED SMITH LLP**

Wallace B. Neel (WN 0038)
David E. Weiss (*admitted pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Tel. (212) 521-5400
Fax (212) 521-5450
*Attorneys for Plaintiffs*
*E*Trade Savings Bank and E*Trade*
*Mortgage Corporation*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

THE ALLEGATIONS OF THE COMPLAINT ..................................................... 2

ARGUMENT ...................................................................................................... 4

I.    The Allegations Of The Complaint Amply Support E*TRADE's Claims Because They Plausibly Suggest an Entitlement to Relief from Fast Track................................. 4

    A.    The Complaint Alleges Sufficient Factual Information To Withstand A Motion To Dismiss Under The New Pleading Standard ....................................... 9

    B.    *Bell Atlantic* has no bearing whatsoever on "information and belief" pleading ......................................................................................... 11

II.   Plaintiffs Sufficiently Allege that NSA and Fast Track  Are *Alter Egos* Of One Another ................................................................................................ 12

III.  The Motion to Dismiss Each of E*TRADE's Individual Claims Should Be Dismissed ............................................................................................... 15

    A.    The Complaint Sufficiently Alleges Breach Of Contract ..................................... 15

    B.    The Complaint Sufficiently Alleges Conversion, Which May Be Pled On Information And Belief ............................................................................ 15

    C.    The Complaint Sufficiently Alleges Breach of Fiduciary Duty ......................... 17

    D.    The Complaint Sufficiently Alleges Fraud .......................................................... 17

    E.    The Complaint Sufficiently Alleges Negligence ................................................. 20

    F.    The Complaint Sufficiently Alleges Unjust Enrichment ..................................... 20

    G.    The Complaint Sufficiently Alleges Money Had and Received........................... 21

CONCLUSION.................................................................................................. 21

## TABLE OF AUTHORITIES

### CASES

*ABKCO Music, Inc. v. Harrisongs Music Ltd.*,
    722 F.2d 988 (2d Cir. 1983) ...................................................................13

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank National Association*,
    731 F.2d 112 (2d Cir. 1984) ...................................................................17

*Adler v. Pataki*,
    185 F.3d 35 (2d Cir. 1999) ...............................................................12, 16

*Aktieselskabet AF v. Fame Jeans*,
    2007 WL 1655877 (D.D.C. June 7, 2007)................................................7

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*,
    2006 WL 278138 (S.D.N.Y. 2006).........................................................17

*Alter v. Bogoricin*,
    1997 WL 691332 (S.D.N.Y. 1997)..........................................................10

*American Fuel Corp. v. Utah Energy Development Co.*,
    122 F.3d 130 (2d Cir. 1997) ..............................................................8, 10

*Bell Atlantic Corporation v. Twombly*,
    127 S. Ct. 1955 (May 21, 2007) ..............................................1, 3, 5, 7, 10

*Berrios v. State University of New York at Stony Brook*,
    2007 WL 2991461 (E.D.N.Y. Oct. 10, 2007)........................................3, 4

*Citadel Management Inc. v. Telesis Trust, Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000) ....................................................11

*Citicorp International Trading Co. v. Western Oil & Refining Co.*,
    771 F. Supp. 600 (S.D.N.Y. 1991) ...........................................................9

*Dover Ltd. v. A.B. Watley, Inc.*,
    2006 WL 2987054 (S.D.N.Y. 2006).........................................................10

*Elektra Enterprise Group v. Santangelo*,
    2005 WL 3199841 (S.D.N.Y. 2005)..........................................................7

*Erickson v. Pardus*,
    127 S. Ct. 2197 (June 4, 2007) ..............................................1, 2, 3, 6

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ...............................................................................4

*Fantozzi v. Axsys Techs., Inc.*,
   2007 WL 2454109 (S.D.N.Y. August 20, 2007) ..............................................12

*Fletcher v. Atex, Inc.*,
   68 F.3d 1451 (2d Cir. 1995) ................................................................................8

*Golden Pacific Bancorp v. F.D.I.C.*,
   273 F.3d 509 (2d Cir. 2001) ..............................................................................16

*Impulse Marketing Group, Inc. v. National Small Bus. Alliance, Inc.*,
   2007 WL 1701813 (S.D.N.Y. June 12, 2007) .....................................................9

*In re Elevator Antitrust Litigation*,
   502 F.3d 47 (2d Cir. 2007) .............................................................................4, 6

*In re Leslie Fay Cos. Sec. Litigation*,
   871 F. Supp. 686 (S.D.N.Y. 1995) .....................................................................7

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. June 14, 2007).................................................7, 8, 9, 10, 11, 12

*JSC Foreign Econ. Association Technostroyexport v. International Development &
   Trade Serv., Inc.*,
   295 F. Supp. 2d 366 (S.D.N.Y. 2003) ..............................................................10

*Kurtzman v. Bergstol*,
   40 A.D.3d 588 (2d Dep't 2007) ........................................................................13

*Lazard Freres & Co. v. Protective Life Insurance Co.*,
   108 F.3d 1531 (2d Cir. 1997) .............................................................................8

*Local 812 GIPA v. Canada Dry Bottling Co. of New York*,
   1999 WL 301692 (S.D.N.Y. 1999).....................................................................9

*Makas v. Orlando*,
   2007 WL 4162826 (S.D.N.Y. November 21, 2007).............................................6

*Maverick Recording Co. v. Goldshteyn*,
   2006 WL 2166870 (E.D.N.Y. 2006) ...................................................................7

*Nationwide Cellular Service*,
   1991 WL 233284 (cites omitted).......................................................................15

*Nationwide Cellular Service, Inc.*,
    1991 WL 233284 (emphasis added) ...................................................................................14

*Nationwide Cellular Service, Inc. v. American Mobile Communications, Inc.*,
    1991 WL 233284 (S.D.N.Y. 1991)........................................................................................11

*Old Republic Insurance Co. v. Hansa World Cargo Serv., Inc.*,
    170 F.R.D. 361 (S.D.N.Y. 1997)............................................................................................9

*R.H. Damon & Co. v. Softkey Software Products, Inc.*,
    811 F. Supp. 986 (S.D.N.Y. 1993) .......................................................................................11

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
    929 F. Supp. 117 (S.D.N.Y. 1996) .........................................................................................8

*S.W. v. Warren*,
    2007 WL 4115949 (S.D.N.Y November 16, 2007)................................................................4

*Schlick v. Penn-Dixie Cement Corp.*,
    507 F.2d 374 (2d Cir. 1974) .................................................................................................15

*Soft Classics S.A. Dec. C.V. v. Hurowitz*,
    444 F. Supp. 2d 231 (S.D.N.Y. 2006) ..................................................................................16

*Sterling Interiors Group, Inc. v. Haworth, Inc.*,
    1996 WL 426379 (S.D.N.Y. 1996)......................................................................................15

*Strojmaterialintorg v. Russian America Commercial Corp.*,
    815 F. Supp. 103 (E.D.N.Y. 1993) .......................................................................................17

*TON Services, Inc. v. Qwest Corporation*,
    493 F.3d 1225 (10th Cir. 2007) ..............................................................................................4

*Tierney v. Omnicom Group Inc.*,
    2007 WL 2012412 (S.D.N.Y. July 11, 2007).......................................................................17

*Trademark Trial and Appeal Board.*,
    2007 WL 1655877 ..................................................................................................................8

*U2 Home Entertainment, Inc. v. Kylin TV, Inc.*,
    2007 WL 2028108 (E.D.N.Y. July 11, 2007).........................................................................3

*U.S. v. International Longshoremen's Association*,
    2007 WL 3196679 (E.D.N.Y. November 01, 2007) ...............................................................3

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) .............................................................................9

*Zaro Licensing, Inc. v. Cinmar, Inc.*,
    779 F. Supp. 276 (S.D.N.Y. 1991) .......................................................................14

## STATUTES

Fed. R. Civ. P. 8 ................................................................................................... passim

Fed. R. Civ. P. 9(b) ...............................................................................................9, 15

Fed. R. Civ. P. 12(b)(6) ...........................................................................................2, 4

## ADDITIONAL AUTHORITIES

Scott Dodson, *Pleading Standards After Bell Atlantic Corp. v. Twombly*, 93 Va. L. Rev.
    In Brief 121 (2007) .............................................................................................5

Keith Bradley, *Pleading Standards Should Not Change After Bell Atlantic v. Twombly*,
    102 Nw. U. L. Rev. Colloquy 117, 118 (2007) ...................................................5

Plaintiffs E*TRADE Savings Bank and E*TRADE Mortgage Corporation, collectively referred to herein as "E*TRADE," respectfully submit this Memorandum of Law in Opposition to defendant Fast Track Title Agency, LLC's ("Fast Track") Motion to Dismiss the Amended Complaint (the "Am. Compl.") pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Fast Track's motion should be denied. If for any reason the Court elects not to deny defendant's motion *in toto*, E*TRADE respectfully requests leave to amend its Amended Complaint.

## INTRODUCTION

This case arises from the following simple facts: E*TRADE entrusted over $3 million to defendants, who are Fast Track (a title insurance agency), National Settlement Agency, Inc. (a closing agency), and Richard A. Leff, Steven M. Leff, and Rachel M. Leff (the individual owners and operators of those agencies). However, instead of passing that money along to E*TRADE's customers for their use in originating or refinancing home mortgages, the Defendants simply pocketed the money. E*TRADE then had to dip into its own coffers and essentially fund the same loans twice to cover its obligations to the borrowers. E*TRADE now seeks to recoup the funds that defendants absconded with.

To complicate matters further, the three individual Defendants have attempted to shield their malfeasance behind two corporate shells which they operated interchangeably and used to shuffle assets at their convenience. The Leff brothers and Steven's wife Rachel control two corporations, National Settlement Agency, Inc. ("NSA") and Fast Track. Steven M. Leff—who is under a federal indictment for his actions against E*TRADE and other entities—is both president of NSA and an officer and employee of Fast Track. His wife Rachel M. Leff is also an officer and employee of Fast Track. His brother Richard A. Leff—an attorney, no less—is also an employee and officer of both NSA and Fast Track.

Essentially, the Leffs used Fast Track and NSA as *alter egos* to defraud and injure E*TRADE to the tune of several million dollars. Fast Track's role in the scheme constitutes fraud, breach of contract, breach of its fiduciary duty to E*TRADE as title insurance agent, and gives rise to a host of other common law causes of action.

In the face of these facts, Fast Track has no defense except to raise the specter of *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (May 21, 2007), and pray that the Court views the story above—which is laid out in full in the Amended Complaint—as "implausible" and therefore insufficiently pleaded.

Fast Track's argument fails: the allegations of the Amended Complaint are not merely plausible, they are compelling. For the reasons set forth herein, the Motion to Dismiss should be denied.

## THE ALLEGATIONS OF THE COMPLAINT

E*TRADE is in the business of, among other things, funding residential mortgages. Am. Compl. at ¶ 11. When a mortgage loan closes, a "closing agent" and a "title insurance agent" are required. The lending bank transfers funds to the closing agent in trust, and the closing agent is legally obligated to disburse specific funds to certain escrow accounts that the closing agent maintains. *Id.* at ¶ 14. At that point, the title insurance agent is legally obligated to (1) place title insurance on the subject properties, and (2) ensure that the lender's loans are senior to other encumbrances on the subject properties. *Id.*

As mentioned above, Defendants are a unitary tangle of interlaced entities and persons. Two of the defendants are corporate entities: NSA and Fast Track. The other three Defendants are the persons who control and operate those corporate shells. Steven M. Leff is the president of NSA and—at the same time—an officer and employee of Fast Track. His wife Rachel M. Leff (with whom he lives) is <u>also</u> an officer and employee of Fast Track. *Id.* at ¶¶ 6, 7. His

brother Richard A. Leff—a New York-attorney, no less—is <u>also</u> an employee and officer of <u>both</u> NSA and Fast Track. *Id*. at ¶ 8.

In the spring and summer of 2007, NSA acted as E*TRADE's closing agent regarding certain mortgages, while Fast Track acted as the title insurance agent. *Id*. at ¶¶ 12-13. Thus, the three family members—Steven, Rachel, and Richard Leff—essentially acted as closing agents *and* as title insurance agents via their two corporate shells. *Id*. at ¶¶ 5, 12-13.

At some point in the spring and summer of 2007, though, the Leffs decided to abandon legitimate business practices and switch to outright fraud and conversion. When the Leffs, working through their conduit companies Fast Track and NSA, had amassed more than $3 million in E*TRADE money in escrow accounts, that money simply <u>disappeared</u>. *Id*. at ¶¶ 15, 16.

Defendants had been required to disburse those funds to E*TRADE's borrowers and other designated payees. *Id*. at ¶ 15, 17. However, rather than disburse the funds as required, defendants secreted the loan proceeds for their own personal uses and left the would-be payees (and E*TRADE) in the lurch. *Id*. at ¶ 15. Indeed, the conduct was so egregious that Steven M. Leff has been <u>indicted</u> on federal charges of embezzlement, partially arising from his theft of E*TRADE's funds as alleged in the Amended Complaint. *Id*.

E*TRADE was left to clean up the mess. At great expense, E*TRADE honored its duties to satisfy its borrowers' obligations, essentially "re-funding" their loans. *Id*. at ¶ 16. E*TRADE's total losses from Defendants' wrongful conduct currently exceed $3 million. *Id*.

In September 2007, E*TRADE filed a complaint against Fast Track, NSA, and the Leffs, demanding a money judgment from all defendants and an injunction against all Defendants, based on the following seven causes of action: (Count I) Breach of Contract; (Count II)

Conversion; (Count III) Breach of Fiduciary Duty; (Count IV) Fraud; (Count V) Negligence; (Count VI) Unjust Enrichment; and (Count VII) Money Had and Received. The Amended Compliant sets forth the same causes of action.

## ARGUMENT

Fast Track's motion can aptly be summarized in two words: *Bell Atlantic*. Fast Track apparently believes that the Supreme Court's decision in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (May 21, 2007), is dispositive. In *Bell Atlantic*, the Supreme Court held that plaintiffs' allegations in that case of "parallel conduct" amongst the defendants did not adequately state a claim of illegal antitrust conspiracy under Section 1 of the Sherman Act and, therefore, the complaint did not "render plaintiffs' entitlement to relief plausible." 127 S. Ct. at 1973 n.14.

Fast Track's argument is wrong, because E*TRADE's Amended Complaint amply satisfies the test set forth in *Bell Atlantic* and subsequent Supreme Court and Second Circuit decisions. Furthermore, Fast Track's more specific objections to the seven causes of action and the alter ego allegations similarly fall flat.

## I.    The Allegations Of The Complaint Amply Support E*TRADE's Claims Because They Plausibly Suggest an Entitlement to Relief from Fast Track

Fast Track grossly overstates *Bell Atlantic's* impact on pleading standards. Moreover, Fast Track inexplicably fails to even mention two important opinions, both binding on this court and decided after *Bell Atlantic*. These cases establish that *Bell Atlantic* is not as radical as Fast Track would wish this Court to believe.

*Bell Atlantic* was a complex antitrust class action, in which plaintiffs alleged an illegal conspiracy among the "Baby Bells" to inhibit the growth of third-party competitors and to refrain from competing among themselves. The Court held that, even though plaintiffs had adequately

pled parallel conduct amongst the defendants, this alone could not adequately state a claim for

conspiracy under Section 1 of the Sherman Act. The Court was careful to clarify that it was "not

requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief

that is plausible on its face," 127 S. Ct. at 1974, and that "a Rule 12(b)(6) motion to dismiss does

not need detailed factual allegations. . . ." *Id.* at 1964. Without even considering the subsequent

case law, then, Fast Track's main argument for dismissal begins to unravel: *Bell Atlantic* merely

requires that the complaint "give the defendant fair notice of what the claim is," which the

E*TRADE Amended Complaint plainly does. 127 S. Ct. at 1964.

Moreover, subsequent decisions confirm that Fast Track at best overstates the intended

and actual impact of *Bell Atlantic*. First, barely two weeks after deciding *Bell Atlantic*, the

Supreme Court issued *Erickson v. Pardus,* 127 S. Ct. 2197 (June 4, 2007), a case through which

the Court set out to reign in any potential unintended effects of *Bell Atlantic*. In *Erickson*, a

prisoner filed a *pro se* suit against prison officials, alleging that they did not permit him access to

necessary hepatitis medication. 127 S. Ct. at 2197-199. In reversing the Tenth Circuit's

dismissal of the complaint, *Erickson* reaffirmed that the basic standard of Fed. R. Civ. P. 8

remains intact, notwithstanding *Bell Atlantic*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atlantic*, 127 S. Ct. at 1964, in turn quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)). Nowhere in the opinion does the *per curiam* Court mention the

"plausibility" language.

Another essential case which Fast Track inexplicably and completely overlooks is *Iqbal*

*v. Hasty*, 490 F.3d 143 (2d Cir. June 14, 2007), representing the Second Circuit's interpretation

of, and attempt to reconcile, *Bell Atlantic* and *Erickson*. Like *Erickson*, the *Iqbal* court held that the plaintiff's allegations of mistreatment at the hands of government officials set forth in the complaint sufficed, with a few exceptions, "to defeat the Defendants' attempt to terminate the lawsuit at a preliminary stage." 490 F.3d at 178. *Iqbal* read the two Supreme Court cases together to mean that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id.* at 157-158. Moreover, the court absolutely rejected the idea that *Bell Atlantic* imposed any type of "heightened pleading requirement" on lower courts and litigants. *Id.* at 158.

　　*Iqbal* is particularly notable for three of the court's observations: first, it notes that *Bell Atlantic* "did not disclaim its prior statement that 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'" *Id.* at 157 (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993)). Second, *Iqbal* affords great weight to *Erickson*:

> [J]ust two weeks after issuing its opinion in *Bell Atlantic*, the Court cited it for the traditional proposition that "[s]pecific facts are not necessary [for a pleading that satisfies Rule 8(a)(2)]; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 127 S. Ct. at 2200 (quoting *Bell Atlantic's* quotation from *Conley*) . . . .

*Id.*

　　Finally, and most significantly, if a complaint does not satisfy the new pleading standard, the court said that the appropriate procedure <u>is not dismissal</u>; rather, "some elements of a plaintiff's claims might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement" at a later time. *Id.* at 158 (citing Fed. R. Civ. P. 12(e)). Therefore,

in order to afford either side an opportunity to learn the necessary facts, the district court may

"consider exercising its discretion to permit some limited and tightly controlled reciprocal

discovery so that a defendant may probe for amplification of a plaintiff's claims and a plaintiff

may probe such matters as a defendant's knowledge of relevant facts and personal involvement

in challenged conduct." *Id.*

District courts within the Second Circuit have now had some opportunity to digest and

make sense of *Bell Atlantic, Erickson* and *Iqbal.* In an October 10, 2007 decision, the Eastern

District of New York succinctly summarized the collective and limited impact of these cases as

follows:

> The "retirement" of *Conley's* language, *see Bell Atlantic Corp.,* 127 S.Ct. at 1969, is not
> a wholesale rejection of the general pleading rules to which federal courts have become
> accustomed. Instead, it is a rejection of *Conley's* "negative gloss" on the accepted
> pleading standard that once a claim is stated, it may be supported by any set of facts
> consistent with the allegations of the complaint. *Bell Atlantic Corp.,* 127 S.Ct. at 1969.
> Indeed, shortly after its decision in *Bell Atlantic,* the Court reiterated that the pleading of
> specific facts in support of a complaint is not necessary. Instead, a complaint need only
> give the defendant "fair notice of what the . . . claim is and the grounds upon which it
> rests."

*Berrios v. State University of New York at Stony Brook,* 2007 WL 2991461, *3 (E.D.N.Y.

Oct. 10, 2007)[1] (quoting *Erickson,* 127 S.Ct. at 2200). Moreover, "[t]he 'plausibility' language

used by the Supreme Court in *Bell Atlantic,* has not been interpreted by the Second Circuit to

require a 'universal standard of heightened fact pleading,' but to require a complaint to 'amplify

a claim with some factual allegations in those contexts where such amplification is needed to

render the claim *plausible.*" *Id.,* citing *Iqbal,* 490 F.3d at 158; *see also U2 Home Entertainment,*

---

[1]   Indeed, many New York district court cases have quoted the limiting language from *Erickson* and *Iqbal,* which
makes Fast Track's failure to cite either one particularly curious. *See, e.g., U.S. v. International
Longshoremen's Ass'n* 2007 WL 3196679, *28 (E.D.N.Y. November 01, 2007) (under *Erickson* and Rule
8(a)(2), "[s]pecific facts are not necessary"); *U2 Home Entertainment, Inc. v. Kylin TV, Inc.,* 2007 WL
2028108, *5 (E.D.N.Y. July 11, 2007) (denying defendant's motion to dismiss because under *Erickson,* "a
complaint need only give the defendant 'fair notice of what the . . . claim is and the grounds upon which it
rests'").

*Inc. v. Kylin TV, Inc.*, 2007 WL 2028108, \*5 (E.D.N.Y. July 11, 2007) ("The Second Circuit has

not interpreted [*Bell Atlantic*] to require a 'universal standard of heightened fact pleading;'

rather, it requires a 'flexible plausibility standard, which obliges a pleader to amplify a claim

with some factual allegations in those contexts where such amplification is needed to render the

claim *plausible*" (quoting *Iqbal*)). The Tenth Circuit has likewise recognized that *Bell Atlantic* is

not nearly as radical as Fast Track would have this Court believe. *TON Services, Inc. v. Qwest*

*Corporation*, 493 F.3d 1225, 1236, n.3 (10th Cir. 2007) ("even under the new 'plausibility'

regime, a complaint need not provide 'specific facts'").

Significantly, *Berrios* also emphasizes what *Bell Atlantic* did *not* change. "In the context

of a motion to dismiss, this court must, as always, assume that all allegations set forth in the

complaint are true and draw all inferences in favor of the non-moving party." *Berrios*, 2007 WL

2991461 at \*3.[2] Furthermore, on a Rule 12(b)(6) motion, the issue is still "not whether a

plaintiff will ultimately prevail"; rather, it is "whether the claimant is entitled to offer evidence to

support the claims." *S.W. v. Warren*, 2007 WL 4115949, \*4 (S.D.N.Y November 16, 2007)

(quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168,

177 (2d Cir. 2004)); *see also Bell Atlantic*, 127 S. Ct. at 1965 ("[a]sking for plausible grounds to

infer [unlawful activity] does not impose a probability requirement at the pleading stage; it

simply calls for <u>enough fact to raise a reasonable expectation that discovery will reveal evidence

of [the unlawful activity]</u>") (emphasis added).

---

[2]    Fast Track's cited cases acknowledge as much. *See, e.g., In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007).

A.    **The Complaint Alleges Sufficient Factual Information To Withstand A Motion To Dismiss Under The New Pleading Standard**

*Bell Atlantic* in no way compels dismissal of this case. It bears nothing in common factually with this case, and the face of E*TRADE's Amended Complaint satisfies the pleading standard enunciated therein.

Fast Track argues that *Bell Atlantic* alone warrants dismissal. But Fast Track is wrong because (aside from merely parroting the "plausibility" language from *Bell Atlantic*, as Fast Track constantly does) *Bell Atlantic* cannot be divorced from its antitrust confines.

Fast Track fails to realize or acknowledge that the specific context of *Bell Atlantic* is important, in terms of its subject matter and complexity. *See* Keith Bradley, *Pleading Standards Should Not Change After* Bell Atlantic v. Twombly, 102 Nw. U. L. Rev. Colloquy 117, 118 (2007) ("we must read *Twombly* in the context of antitrust law"). The Court recognized that it would have been an extremely expensive case to litigate, since discovery would have involved the exchange of countless documents, and the depositions of officers from several very large corporations. *See Bell Atlantic*, 127 S. Ct. at 1967 n.6 ("determining whether some illegal agreement may have taken place between unspecified persons at different ILECs (each a multibillion dollar corporation with legions of management level employees) at some point over seven years is a sprawling, costly, and hugely time-consuming undertaking"); *see also* Scott Dodson, *Pleading Standards After* Bell Atlantic Corp. v. Twombly, 93 Va. L. Rev. In Brief 121 (2007) ("the need for additional fact pleading is particularly necessary in antitrust litigation because antitrust discovery—especially antitrust class action discovery—can be potentially massive and expensive"); *Iqbal*, 490 F.3d at 157 ("These concerns provide some basis for believing that whatever adjustment in pleading standards results from Bell Atlantic is limited to cases where massive discovery is likely to create unacceptable settlement pressures"). Less

complex cases, such as this, do not present the same issues – either in terms of complexity or expense – compared with litigating a massive antitrust class action.[3]

Moreover, the factual and legal complexity of *Bell Atlantic* contrasts sharply with the simplicity of *Erickson*. The straightforwardness of the present case warrants the same result as *Erickson*, with which this case bears much more in common than *Bell Atlantic* (notwithstanding that *Erickson* involved a *pro se* litigant, a fact which the Court considered in that case): E*TRADE delivered funds to Fast Track for the latter to hold in escrow and to distribute according to E*TRADE's instructions. Fast Track, in conjunction with the other defendants, instead absconded with these funds. The foregoing facts are clearly set forth in the Amended Complaint, and therefore, the Court should deny Fast Track's motion to dismiss, as did the *Erickson* court.

When plucked from its factual context, *Bell Atlantic* has no bearing on this case, because as explained in detail below, "[w]hether stated using *Conley*-like language or *Bell Atlantic-Iqbal* plausibility language, plaintiff [E*TRADE's] claim that the defendants [are liable for the seven causes of action enumerated in the complaint] is not implausible, and [it] may be able to prove facts to support such a claim." *Makas v. Orlando*, 2007 WL 4162826, *1 (S.D.N.Y. November 21, 2007).

Fast Track quotes from three haphazardly chosen paragraphs, plucked from the Amended Complaint and then summarily concludes that the entire Amended Complaint (all 53 paragraphs) fails under *Bell Atlantic*. *See* Def. Def. Mem. in Support of Motion to Dismiss ("Def. Mem.") at 4. Fast Track apparently believes that the entire Amended Complaint fails because E*TRADE

---

[3]   Fast Track's reliance on *In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007), is misplaced for identical reasons: that case is also plainly limited to its highly technical antitrust context, in which plaintiffs failed to adequately plead, *inter alia*, that several enormous companies "conspired to engage in anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act" and "unilaterally monopolized and attempted to monopolize the maintenance market for their elevators." *Id.*

did not support *all* of its claims in these three randomly selected paragraphs. Because the Court

will obviously consider the Amended Complaint in its entirety, this argument need not be

considered. *See In re Leslie Fay Cos. Sec. Litig.*, 871 F. Supp. 686, 699 (S.D.N.Y. 1995)

(defendant "fails to consider the amended complaint as a whole").

      **B.**     ***Bell Atlantic* has no bearing whatsoever on "information and belief" pleading**

      Contrary to Fast Track's repeated assertions, E*TRADE's Amended Complaint does not

fail simply because certain paragraphs are based on "information and belief." A plaintiff must

indicate grounds for allegations made on information and belief only for claims subject to a

heightened standard. *Maverick Recording Co. v. Goldshteyn*, 2006 WL 2166870, *4-5

(E.D.N.Y. 2006) ("Since Rule 8 standards apply to the instant claims, plaintiffs may plead on

information and belief without alleging additional facts to show the source of their information").

Therefore, E*TRADE's Amended Complaint withstands the motion to dismiss, notwithstanding

that portions are alleged on information and belief. *Id.*

      Moreover, neither of Fast Track's cited cases, *Bell Atlantic* and *Aktieselskabet AF v.*

*Fame Jeans*, 2007 WL 1655877 (D.D.C. June 7, 2007), supports its argument here. Nowhere

does *Bell Atlantic* condemn "information and belief" pleading, which has long been held

"sufficient to satisfy federal notice pleading under Fed.R.Civ.P. 8(a)." *Elektra Enter. Group v.*

*Santangelo,* 2005 WL 3199841, at *7 (S.D.N.Y. 2005). Although a portion of the complaint

dismissed in *Bell Atlantic* was based on information and belief, the Court did not hold that the

complaint fell short of the new pleading standard *because* it was pled in this manner. 127 S. Ct.

at 1971-74. The Court drew its holding much more narrowly: although plaintiffs' complaint

successfully alleged "parallel conduct" amongst the defendants, this allegation did not

adequately state a claim for illegal conspiracy under Section 1 of the Sherman Act. *Id.*

Similarly, in *Aktieselskabet*, portions of the complaint happened to be based on information and

- 11 -

belief, but the D.C. District Court rejected the claim for a wholly unrelated reason: because plaintiff failed to previously raise the claim before the Trademark Trial and Appeal Board. 2007 WL 1655877 at *14-15.

## II.    Plaintiffs Sufficiently Allege that NSA and Fast Track Are *Alter Egos* Of One Another

Fast Track argues that the *alter ego* claim should be dismissed because "plaintiffs have failed to provide any evidence that Fast Track committed fraud." Def. Mem. at p. 9. Setting aside the fact that there is no need to "provide evidence" to defeat a motion to dismiss, Fast Track's argument is still fatally flawed because it ignores the fact that New York law does not require an allegation of "fraud" in order to establish *alter ego* liability.

Under New York law,[4] two companies act as "alter egos" for one other if: (1) one company exercised complete domination over the other in respect to the transaction attacked; and (2) such domination was used to commit a fraud or other wrong against the plaintiff which resulted in the plaintiff's injury. *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130 (2d Cir. 1997). "A claimant can pierce the corporate veil by pleading some non-fraudulent wrong attributable to defendant's complete domination" of another entity. *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117 (S.D.N.Y. 1996) (emphasis added) (internal quotes omitted). Fast Track's argument that the *alter ego* claim fails because it (allegedly) omits allegations of fraud is therefore demonstrably wrong.

Moreover, Fast Track cannot reasonably deny that the Amended Complaint alleges a "wrong" resulting from the *alter ego* relationship: the Leffs used Fast Track and NSA in a

---

[4]    E*TRADE's common law claims arise under this Court's diversity jurisdiction, so the choice-of-law rules of the forum state apply; here, the forum state is New York. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). Under New York's choice-of-law rules, the controlling law with respect to the entity whose veil is to be pierced is the law of the state of its incorporation. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Because Fast Track is a New York limited liability company, New York law applies in this case.

scheme to steal over $3 million from E*TRADE. *See, e.g.*, Am. Compl. ¶¶ 13, 15. There can be

no reasonable argument that losing $3 million constitutes "harm."

    Moreover, because the "wrong" required for *alter ego* liability is not limited to "fraud"

alone, E*TRADE's alter ego allegations need only meet the liberal notice pleading standards of

Fed. R. Civ. P. 8(a), not the more stringent pleading standards of Fed. R. Civ. P. 9(b). *See*

*Citicorp Int'l Trading Co. v. Western Oil & Refining Co.*, 771 F. Supp. 600, 608 (S.D.N.Y.

1991).[5]

    Finally, contrary to Fast Track's contention, it is "simply wrong" to say that alter ego

status cannot be alleged on information and belief. *Local 812 GIPA v. Canada Dry Bottling Co.*

*of New York*, 1999 WL 301692, *8 (S.D.N.Y. 1999) (denying motions to dismiss)[6]. As

explained in *Local 812 GIPA*:

> In the cases [defendant] cites in support of this proposition, dismissal of the complaint
> was warranted either because the claim was subject to a heightened pleading standard,
> *see Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (claim under N.Y.
> Consumer Protection Act must be plead with specificity), or because the complaint
> contained only a conclusory allegation of alter ego status, *see Old Republic*, 170 F.R.D.
> at 374, and not because the allegations were based "upon information and belief."

*Id.* Note that in this passage, *Local 812 GIPA* explicitly distinguishes *Old Republic Insurance*

*Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361 (S.D.N.Y. 1997), a case upon which Fast

Track heavily relies. *See* Def. Mem. at 9-10, 15.

    Similarly, the present case is distinguishable from *Old Republic*. The Amended

Complaint here alleges that officers and employees of Fast Track and NSA (i) are related by

blood and by marriage; (ii) share an address; (iii) serve closely related functions in the mortgage

---

[5]    Recent cases illustrate that *Bell Atlantic* did not alter this rule. *See Impulse Mktg. Group, Inc. v. Nat'l Small Bus. Alliance, Inc.*, 2007 WL 1701813 (S.D.N.Y. June 12, 2007) (under Rule 9(b) "allegations of dominance and control . . . are not subject to the heightened pleading standard, even where the veil-piercing claim is based on an allegation that the corporate form was abused to perpetrate fraud").

[6]    Also, as explained above, nowhere does *Bell Atlantic* condemn pleading on information and belief, whether in regards to corporate alter ego status or any other claim.

industry; (iv) acted in that capacity at the time they caused injury to E*TRADE; (v) effectively

acted as closing agents *and* as title insurance agents via the two corporations; (vi) were *alter egos*

of one another "by virtue of their common ownership and unity of interest." *See* Am. Compl. at

¶¶ 3-8, 12-14.

These are particularized facts, not "bare, conclusory allegations," as Fast Track blithely

characterizes them  Def. Mem. at 7.  Moreover, it is certain that discovery will shed further light

upon the entanglement among the Leffs and their two corporate shells.  "At this preliminary

stage, the Plaintiffs have no way of knowing whether [defendant alter egos] observed corporate

formalities," *Dover Ltd. v. A.B. Watley, Inc.*, 2006 WL 2987054, *29 (S.D.N.Y. 2006), but

nevertheless when viewed together, the foregoing passes muster under the *American Fuel Corp.*

two-prong test, and therefore E*TRADE should be permitted to proceed in order to discover

additional facts "consistent with the allegations of the complaint."  *Bell Atlantic Corp.*, 127 S.Ct.

at 1969.  Contrary to Fast Track's suggestion, at this early stage of the case a plaintiff need not

eliminate all other possible scenarios that could potentially explain away the interrelated

circumstances amongst the entities as mere coincidence. *See Dover Ltd.*, 2006 WL 2987054 at

*30 (denying motion to dismiss the alter ego claims because the facts "suggest a high degree of

interrelatedness among the [two] Companies"); *JSC Foreign Econ. Ass'n Technostroyexport v.*

*Int'l Dev. & Trade Serv., Inc.*, 295 F. Supp. 2d 366, 378 (S.D.N.Y. 2003) (rejecting alleged alter

ego's motion to dismiss because it "ignore[d] the substance of the [complaint]" and "impose[d]

too high a burden on the plaintiff's pleading"); *see also Alter v. Bogoricin*, 1997 WL 691332, *5

(S.D.N.Y. 1997) ("plaintiff's alter-ego allegations are judged by the liberal notice pleading

standards of Fed. R. Civ. P. 8(a)").

**III.    The Motion to Dismiss Each of E\*TRADE's Individual Claims Should Be Dismissed**

    **A.    The Complaint Sufficiently Alleges Breach Of Contract**

Fast Track's half-hearted attempt to have this claim dismissed utterly fails. "To adequately state a claim for breach of contract a plaintiff must allege: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach." *R.H. Damon & Co. v. Softkey Software Products, Inc.*, 811 F. Supp. 986 (S.D.N.Y. 1993).

Fast Track cites no authority for the proposition that paragraph 19 of the Amended Complaint – "Defendants contracted with E\*TRADE to act as the closing agents for E\*TRADE in connection with the above-specified loan transactions" – insufficiently alleges the first or latter half of the third elements under *R.H. Damon*. The Amended Complaint obviously alleges that *all* named defendants contracted with E\*TRADE and thereafter breached. *See Nationwide Cellular Service, Inc. v. American Mobile Communications, Inc.*, 1991 WL 233284, \*9 (S.D.N.Y. 1991) ("where the collective term 'defendants' is used, the complaint makes clear that the allegations refer to all defendants"). The fact that Fast Track and the other Defendants were *alter egos* only underscores this point. Paragraphs 19-22 of the Amended Complaint plainly set forth the other elements for breach of contract. Fast Track's weak use of *Bell Atlantic* as a crutch to claim otherwise is transparent.

    **B.    The Complaint Sufficiently Alleges Conversion, Which May Be Pled On Information And Belief**

Conversion comprises three elements: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights. *Citadel Mgmt. Inc. v.*

*Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000). Paragraphs 15, 27 and 28 of the complaint clearly form the factual bases for each of these three elements.

Fast Track makes much ado about irrelevant issues regarding this cause of action. First, as noted above, nowhere does *Bell Atlantic* prohibit plaintiffs from pleading on information and belief, nor does Fast Track cite any authority which would specifically prohibit pleading conversion in such a manner. Second, also as illustrated above, the complaint sufficiently pleads *alter ego* liability. Indeed, Fast Track's demand that the conversion claim be dismissed as "duplicative" of the breach of contract claim, Def. Mem. at p. 13, is an implicit <u>concession</u> that the breach of contract claim <u>is valid</u>. Fast Track cannot claim on one hand that the breach of contract claim must be dismissed, and then turn around and ask the Court to dismiss the conversion claim as "duplicative" of the breach of contract claim. Third, the complaint clearly alleges that defendants exercised unauthorized dominion over the funds: "Rather than disburse the funds as required, defendants secreted all or a portion of the loan proceeds for their own personal uses." Am. Compl. at ¶ 15. Indeed, one would be hard pressed to find a more illustrative example of an exercise of unauthorized dominion.

Finally, "Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to plead two or more statements of a claim, even within the same count, regardless of consistency." *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (internal cite omitted). The rule "offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss or for summary judgment." *Id. See also Fantozzi v. Axsys Techs., Inc.*, 2007 WL 2454109, *7-8 (S.D.N.Y. August 20, 2007) (denying motion to dismiss plaintiff's conversion claim using same rationale under Rule 8(e)(2)). Hence, E*TRADE's conversion

claim is properly pled in the alternative under Rule 8(e)(2). E*TRADE's Amended Complaint

does not ask that it "be paid twice," as Fast Track alleges. Def. Mem. at 13. It requests to

recoup losses attributable to defendants *once*, based on any of the causes of action. *See*

Amended Complaint at "Wherefore" clause, pp. 10-11.

### C.    The Complaint Sufficiently Alleges Breach of Fiduciary Duty

A plaintiff successfully pleads breach of fiduciary duty by pleading (1) the existence of a

fiduciary relationship, (2) misconduct by the defendant, and (3) damages that were directly

caused by the defendant's misconduct. *See Kurtzman v. Bergstol*, 40 A.D.3d 588 (2d Dep't

2007). Paragraphs 29-34 do so here.

As to the first element, agents always owe fiduciary duties to their principals, *see, e.g.,*

*ABKCO Music, Inc. v. Harrisongs Music Ltd.*, 722 F.2d 988, 994 (2d Cir. 1983), and several

paragraphs of the Amended Complaint allege that Fast Track acted as title insurance agent on

behalf of E*TRADE. As to the second element, the Amended Complaint alleges that Fast Track

engaged in misconduct by (1) "converting the funds that had been wired into their escrow

accounts," (2) "not ensuring that E*TRADE's loans would not be subordinate to other

obligations," (3) "not redrawing dishonored checks, or checks that were never delivered to the

designated payees, upon good funds," and (4) "failing to supervise those under their control who

contributed to E*TRADE's losses." Complaint at 31-33. Finally, as to the third element, ¶ 34

alleges that the foregoing list of misconduct caused injury to E*TRADE. Fast Track does not

and cannot seriously argue that its actions did not proximately cause losses to E*TRADE. The

claim is properly pled.

### D.    The Complaint Sufficiently Alleges Fraud

A claim for fraud pleads the following elements: (1) an express representation of a

material fact; (2) that this representation was false; (3) that the representation was made with the

intent to defraud; (4) that the plaintiff reasonably relied upon this representation; and (5) that the plaintiff suffered damages as a result. *See Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991). Paragraph 37 of the Amended Complaint pleads the first element. ("Upon information and belief, defendants thereby knowingly and intentionally misrepresented to E*TRADE that they would disburse funds as instructed, and knowingly and intentionally misrepresented to E*TRADE that E*TRADE would not be subordinate to other lenders.") Paragraph 15 pleads the second element. ("Rather than disburse the funds as required, defendants secreted all or a portion of the loan proceeds for their own personal uses. . . .") Paragraphs 37-38 plead the third element. Paragraphs 39 and 40 plead the fourth and fifth elements, respectively. The fraud claim is therefore sufficiently pled.

Fast Track's myriad attacks on the fraud claim are nothing more than misstatements of the law and irrelevancies. First, the claim is not subject to dismissal simply because it does not parse out exactly who said what at precisely what time. "[W]hile Rule 9(b) ordinarily requires that the complaint apprise *each* defendant of the nature of his alleged participation in the fraud, such specificity is not necessary when the defendants are <u>insiders or affiliates</u> . . . ." *Nationwide Cellular Service, Inc.*, 1991 WL 233284 at *6 (emphasis added). Moreover, misrepresentations made in a written document "satisfy the rule's requirement as to identifying the 'when, where, and what' of the alleged misrepresentations." *Id*. Here, it has been alleged that the two defendant corporations are alter egos of one another and that the three individual defendants – all related by blood or marriage – operate both companies. The insider-affiliate exception therefore applies. *See id*. ("Thus, the fact that the Nationwide complaint occasionally attributes misrepresentations to 'the defendants' without distinguishing between the various alleged perpetrators of the fraud, is not fatal to Nationwide's pleading").

- 18 -

Next, under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Therefore, Fast Track's argument that scienter is insufficiently pled fails. "At this point in the proceedings, that information is 'peculiarly within the opposing party's knowledge,' and as such, need not be pled in detail, even under the heightened requirements of Rule 9(b)." *Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379, *7 (S.D.N.Y. 1996) (quoting *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974)). The Amended Complaint alleges that E*TRADE gave over $3 million to defendants who had a fiduciary duty to pass along this money to E*TRADE's customers, but instead defendants ran off with it. What more would Fast Track need to know regarding its fraudulent behavior? At this early stage, these facts suffice to permit the claim to proceed to discovery. *See id.* (denying motion to dismiss claim of fraud because complaint alleged enough factual basis).

Fast Track is also wrong that fraud allegations cannot be based on information and belief. In fact, "Rule 9(b) recognizes the need for and permits such pleading when the matters stated are particularly within the opposing parties' knowledge" – such as information about stock ownership and management positions – or when they relate to scienter, "which is not subject to the more exacting particularity requirements of other components of fraud allegations." *Nationwide Cellular Service,* 1991 WL 233284 at *7 (cites omitted). The portions of this cause of action predicated on information and belief fall into this category, and therefore the form of pleading is proper.

Fast Track bafflingly claims that the Amended Complaint does not specify "what damages were sustained by them as the specific result of the alleged fraud." Def. Mem. at 17. But paragraph 40 plainly states damages are "no less than $3 million." Finally, as explained

above, "Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to plead two or

more statements of a claim, even within the same count, regardless of consistency." *Adler*, 185

F.3d 35 at 41.

### E. The Complaint Sufficiently Alleges Negligence

The face of the Amended Complaint contains all of the requisite facts to sustain this

cause of action, and Fast Track fails to clearly explain why it believes otherwise. *See* Am.

Compl. ¶¶ 41-44. Furthermore, the other claims do not preclude one for negligence because, as

explained above, Rule 8(e)(2) permits Plaintiffs to plead in the alternative. *Adler*, 185 F.3d 35 at

41.

### F. The Complaint Sufficiently Alleges Unjust Enrichment

To plead an unjust enrichment claim under New York law, a plaintiff must allege that (1)

the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the

circumstances are such that in equity and in good conscience the defendant should return the

money or property to the plaintiff. *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d

Cir. 2001). The Amended Complaint does so, at paragraphs 45 through 49.

Moreover, although it is generally true that "no claim for unjust enrichment lies where

the subject matter of the claim is covered by a written contract[,] . . . this rule applies only when

the existence of a contract governing the transaction in question is undisputed." *Soft Classics

S.A. Dec. C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006). This exception applies to

the present case, as Fast Track contends (1) that the Amended Complaint's claim for breach of

contract fails because "it does not state that a contract with Fast Track exists," Def. Mem. at 11,

and (2) that Fast Track would not be liable for NSA's breach of contract because it is not that

company's alter ego. Even if Fast Track were correct (and it is not) that it and its alter egos did

not have a contract with E*TRADE, unjust enrichment is available as an alternate cause of

- 20 -

action. *Id.* (denying motion to dismiss unjust enrichment claim because "the parties disagree as to whether the [agreements] are binding on the Defendants as 'alter egos' of the signatories to the Agreements").

### G.    The Complaint Sufficiently Alleges Money Had and Received

To plead a claim for money had and received, a plaintiff must allege that: (1) the defendant received money belonging to the plaintiff; (2) the defendant benefited from the receipt of money; and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money. *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). The requisite facts all appear at paragraphs 50 through 54 of the Amended Complaint, and therefore this claim withstands the motion to dismiss as well. *See Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 2006 WL 278138, *14 (S.D.N.Y. 2006) (permitting claim for money had and received to proceed, notwithstanding that complaint alleged only that "Defendants allegedly received payment from Plaintiff in the form of fees; Defendant benefited from the money, and Defendants should not be permitted to keep money that they obtained through a fraudulent scheme").

Notably, Fast Track tacitly concedes that the claim for money had and received is not duplicative of the contract claim. *See* Def. Mem. at 20.

### CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied. If for any reason the court does grant any portion of the motion, E*TRADE respectfully requests leave to amend its Amended Complaint. *See Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (plaintiff granted "leave to amend its complaint to allege specific facts supporting a piercing of the corporate veil"); *Tierney v. Omnicom Group Inc.*, 2007 WL

2012412, *3 (S.D.N.Y. July 11, 2007) (Swain, J.) ("Defendant's motion to dismiss is granted as to Plaintiff's Fourth Cause of Action, without prejudice to repleading").

Dated: New York, New York
     March 4, 2008

              REED SMITH LLP

              By:_____
                    Wallace B. Neel (WN 0038)
              599 Lexington Avenue
              New York, New York  10022
              (212) 521-5400

                 - and –

              David E. Weiss, Esq.
              *Admitted Pro Haec Vice*
              Two Embarcadero Center
              Suite 2000
              San Francisco, CA 94111
              415 543 8700

              *Attorneys for Plaintiff*