REED SMITH LLP
Wallace B. Neel (WN 0038)
David E. Weiss (admitted *pro hac vice*)
599 Lexington Avenue
New York, New York 10022
212-521-5400

*Attorneys for Plaintiffs E\*TRADE Savings Bank
and E\*TRADE Mortgage Corporation*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
E\*TRADE SAVINGS BANK; AND              :
E\*TRADE MORTGAGE CORPORATION,
                                        :    Case No. 07-CV-8065 (LTS/GWG)
        Plaintiffs,
                                        :
    -against-                                **SECOND AMENDED COMPLAINT**
                                        :    **(WITH JURY DEMAND)**
FAST TRACK TITLE AGENCY LLC.;
RACHEL M. LEFF; AND RICHARD A.          :
LEFF,
                                        :
        Defendants.
--------------------------------------- x

Plaintiffs, by their attorneys, for their Second Amended Complaint, allege as follows:

## PRIOR DEFENDANTS NOW SUBJECT TO
## DEFAULT JUDGMENTS AND PARTIES

1.    Plaintiff E\*TRADE Savings Bank ("E\*TRADE Savings") is a federally chartered savings bank, maintaining its home office at 671 N. Glebe Road, Arlington, VA 22203.

2.    Plaintiff E\*TRADE Mortgage Corporation ("E\*TRADE Mortgage") is a Virginia Corporation with its principal place of business at 3353 Michelson Drive, Irvine, CA 92612. Plaintiffs E\*TRADE Savings and E\*TRADE Mortgage are collectively referred to herein as "E\*TRADE".

3.    National Settlement Agency, Inc. ("NSA"), which was a Defendant in the initial Complaint and Amended Complaint filed in this matter and which is now a judgment debtor under a Default Judgment entered by the Clerk of this Court on June 16, 2008, is a domestic

NYLIB-8038835.2-WNEEL

business corporation, and upon information and belief, maintains or maintained a principal place of business at 404 Park Avenue South, 5th Floor, New York, NY 10016 and also did or does business out of 575 Madison Avenue, Suite 1006, New York, NY 10022 and 15 Anvil Ct. 15, East Hampton, NY 11937.

4.     Defendant Fast Track Title Agency, LLC, ("Fast Track") is a domestic limited liability company, and upon information and belief, maintains or maintained a principal place of business at 404 Park Avenue South, 5th Floor, New York, NY 10016. Upon information and belief, Defendant Richard A. Leff is a 10% owner of Fast Track. Mr. Leff resides at 10 Park Road, Short Hills, New Jersey 07078. Upon further information, based on Defendant Fast Track Title Agency LLC's Supplemental Statement of Citizenship, which is incorporated herein by reference, a trust known as RSSR owns 90% of Fast Track, and its beneficiaries reside either in Florida or New York.

5.     Upon information and belief, E*TRADE alleges that defendants NSA and Fast Track have such a unity of interest and ownership that they are each the alter ego of the other, and liable for each others' conduct.

6.     Steven M. Leff, who was a Defendant in the initial Complaint and Amended Complaint filed in this matter and who is now a judgment debtor under a Default Judgment entered by the Clerk of this Court on June 16, 2008, is an individual and, upon information and belief, is the president of NSA, and an officer and employee of Fast Track, and maintains a principal residence at 15 Anvil Ct. 15, East Hampton, NY 11937. Upon information and belief, Steven Leff is a beneficiary of the RSSR trust which owns 90% of Fast Track.

7.     Defendant Rachel M. Leff is an individual and, upon information and belief, is or during the relevant time period was the chief executive officer of NSA, as well as an officer and employee of Fast Track, and is the wife of Steven M. Leff, and maintains a principal residence at 15 Anvil Ct. 15, East Hampton, NY 11937. Upon information and belief, Rachel Leff is a

- 2 -

beneficiary of the RSSR trust which owns 90% of Fast Track. This matter is stayed as against Rachel Leff pursuant to an Order of this Court in recognition of her filing for protection under the United States Bankruptcy Code.

8.    Defendant Richard A. Leff is an individual and, upon information and belief, is an attorney licensed in the State of New York, and an employee and officer of both NSA and Fast Track, and the brother of Steven M. Leff, and resides at 10 Park Road, Short Hills, NJ 07078. Upon information and belief, Richard Leff owns 10% of Fast Track.

## JURISDICTION AND VENUE

9.    This court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(a) because E*TRADE Savings is a citizen of the State of Virginia pursuant to 12 U.S.C. §§ 1462(5) and 1464(x), E*TRADE Mortgage is a citizen of Virginia and California pursuant to 28 U.S.C §1332(c)(1), and the defendants are citizens of New York and/or Florida; and the value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

10.    Venue in this court is proper under 28 U.S.C. §1291(a).

## FACTUAL BACKGROUND

11.    E*TRADE was at all relevant times in the business of, among other things, funding residential mortgages.

12.    In connection with the funding of certain mortgages in the spring and summer of 2007, prior defendants NSA and Steven Leff and defendants Rachel Leff, Richard Leff, Fast Track acted as closing agents.

13.    In connection with the same mortgage transactions, upon information and belief, prior defendant Steven Leff and defendants Rachel Leff, Richard Leff and Fast Track acted as title insurance agents.

14.    Defendants, acting as closing agents, had the legal obligation, at the time of the closing of each loan, to disburse to E*TRADE's borrowers and other payees, according E*TRADE's closing instructions, the specific funds that E*TRADE had wired in trust to certain escrow accounts maintained by NSA.  Defendants also had the obligation to disclose and not conceal problems and issues associated with the actions in which they were engaged to provide professional services.

15.    As title insurance agents, defendants had the obligation to place title insurance, and to ensure that the loans provided by E*TRADE would not be subordinate to any other loans on the subject properties at the time of closing.    Defendants also had the obligation to disclose and not conceal problems and issues associated with the actions in which they were engaged to provide professional services.

16.    As alleged above and herein, Fast Track is an alter ego of the now-defaulted NSA by virtue of their common ownership and unity of interest and abuse of the corporate form to commit wrongs against third parties, as described herein.

17.    In addition to responsibility for its own acts and omissions as a title agent and a closing agent, Fast Track is responsible as an alter ego of NSA for all of NSA'a malfeasance and liabilities.

18.    Through its website, NSA held itself out as completely dominant of Fast Track. For example, NSA's website on the Internet used the domain name http://www.closingrocket.com (the "NSA Website").  The NSA Website stated that it was "Powered by: National Settlement Agency, Inc." and advertised itself as "Closing Rocket by NSA."  A copy of the "home page" of the NSA Website is annexed hereto as Exhibit A.

19.    The NSA Website starkly demonstrates the complete dominance of Fast Track by NSA, and the degree to which NSA operated Fast Track as an alter ego.  Several webpages on

- 4 -

the NSA Website were headed "FAST TRACK TITLE AGENCY LLC." Examples of those webpages are annexed hereto as Exhibits B and C.

20.     One of the pages on the NSA Website bore the heading "FAST TRACK TITLE AGENCY LLC," and not only referred to Fast Track as a *settlement agent* (rather than title agent), but also made repeated claims that Fast Track was simply a part of NSA, and vice-versa, *viz.*:

### FAST TRACK TITLE AGENCY, LLC

#### 12 Reasons Why Your Company Should Use *F.T.T.* As Its Title Agent

1.     . . . FTT is not a firm that handles all types of legal matters and, as an aside, dabbles in real estate closings. Title and *lender related services are our only business*, no exception! As a result, your company can become partnered with a *Settlement Agent* with maximum exposure to *closing practices* who is therefore significantly more familiar with and versed in the day to day *issues and solutions related to mortgage closings*. . . .

2.     . . . *NSA's* expertise in the area of loan settlement and their related fields has long been recognized as by the lending and servicing community. Your company will most assuredly gain the benefit of *NSA's* knowledge and expertise in the areas of final document delivery . . .

3.     *FTT* Has The Resources to Meet All of Your Company's Expansion Needs. *NSA* has the capability and resources to dedicate whatever resources are necessary . . .

\*          \*          \*

5.     *At NSA, our goal* is to make the closing process as pleasant and convenient as possible for your borrowers. . . . You can always count *on NSA*.

(Emphasis added). A copy of this webpage is annexed hereto as Exhibit B.

21.    Similarly, another page of the NSA Website was headed "FAST TRACK TITLE AGENCY LLC" and advertised "Fast Track Title *by NSA*" (emphasis added). A copy of this webpage is annexed hereto as Exhibit C.

22.    As further proof that Fast Track was merely an alter ego of NSA, there is documentary proof that Fast Track employees used NSA email addresses in conducting business for Fast Track.

23.    As a preliminary issue, it is clear from the NSA Wsbsite that each company owned separate email extensions—Fast Track agents were given email addresses with the extension of "@fasttracktitle.com" (Exhibit D) whereas NSA employees were assigned "@closingrocket.com" email addresses (Exhibit E). However, the separate email addresses were ignored, and employees of Fast Track interacted with the public as if there was no distinction between the companies.

24.    Fast Track employees used NSA email addresses to interact with the public. For example, Elsa Torres, who listed her position as the "Closing/Clearance Coordinator" of "Fast Track Title Agency," used the email address "Elsa@closingrocket.com." A copy of an email reflecting these facts is annexed hereto as Exhibit F. If Torres had actually been an employee of Fast Track, she would have used an email address ending with "@fasttracktitle.com." However, NSA's domination of Fast Track was so complete that Fast Track employees were treated as NSA employees, and held themselves out to the world as such.

25.    NSA and Fast Track also shared an address and office at 404 Park Avenue South in New York City and shared the same phone number (212-457-8181).

26.    The sharing of e-mail addresses, phone numbers, office space, and business addresses indicates the absence the usual separate paraphernalia that are part of maintaining separate corporate forms, and is strong evidence of alter ego.

- 6 -

27.     As set forth above, NSA and Fast Track also exhibited near-total overlap in ownership, officers, directors, and employees.

28.     Upon information and belief, discovery will reveal further commingling of corporate assets, inter-corporate shuffling of assets and debts, and failures to observe corporate formalities between NSA and Fast Track.

29.     In the spring and summer of 2007, upon information and belief, defendants converted more than $3 million of E*TRADE's funds that had been wired into escrow accounts for defendants to disburse or cause to be disbursed to E*TRADE's borrowers and other designated payees at several mortgage closings.  Rather than disburse the funds as required, defendants secreted all or a portion of the loan proceeds for their own personal uses, to the detriment of E*TRADE.

30.     On June 12, 2008, Steven M. Leff pleaded guilty in the United States District Court for the Eastern District of New York in the matter of <u>United States v. Stephen Leff</u>, Docket No. 08-cr-294 (ETB) (SJF), to embezzlement arising from his activities in connection with the matters alleged herein.  While sentencing has not yet occurred, Steven Leff may be fined up to $1 million and imprisoned for up to 30 years.

31.     E*TRADE was forced to make good on the loans, satisfy other obligations of its borrowers that went unpaid, and incur legal and other expenses in order to address the issues caused by defendants.  E*TRADE's total losses from defendants' wrongful conduct exceed $3,007,914.65, plus prejudgment interest.

32.     The loans affected by defendants wrongful conduct are as follows:

(a) Loan No. EM#####18073 in the original amount of $175,000 (E*TRADE's loss relating to this loan is $135,906.86);

- 7 -

(b) Loan No. ES#####6001 in the original amount of $630,900 (E*TRADE'S loss relating to this loan is $638,974.73);

(c) Loan No. EM#####6035 in the original amount of $455,000 (E*TRADE's loss relating to this loan is $395,563.57);

(d) Loan No. EM#####9021 in the original amount of $160,000 (E*TRADE's loss relating to this loan is $85,077.22);

(e) Loan No. EM#####3102 in the original amount of $395,400 (E*TRADE's loss relating to this loan is $381,119.68);

(f) Loan No. EM#####0008 in the original amount of $417,000 (E*TRADE's loss relating to this loan is $389,322.87);

(g) Loan No. EM#####4026 in the original amount of $100,000 (E*TRADE's loss relating to this loan is $102,515.44);

(h) Loan No. EM#####7027 in the original amount of $85,000 (E*TRADE's loss relating to this loan is $75,649.14);

(i) Loan No. EM#####4043 in the original amount of $92,800 (E*TRADE's loss relating to this loan is $14,417.00);

(j) Loan No. EM#####2025 in the original amount of $259,000 (E*TRADE's loss relating to this loan is $263,567.43);

(k) Loan No. EM#####7151 in the original amount of $60,000 (E*TRADE's loss relating to this loan is $328.00);

(l) Loan No. EM#####6070 in the original amount of $780,000 (E*TRADE's loss relating to this loan is $319,022.42);

(m) Loan No. EM#####2002 in the original amount of $548,000 (E*TRADE's loss relating to this loan is $39,516.25);

(n) Loan No. EM#####5122 in the original amount of $428,000 (E*TRADE's loss relating to this loan is $1,070.00);

(o) Loan No. EM#####0030 in the original amount of $270,000 (E*TRADE's loss relating to this loan is $156,714.04);

(p) Loan No. EM#####7052 in the original amount of $90,000 (E*TRADE's loss relating to this loan is $9,150.00).

## FIRST CAUSE OF ACTION
### (Breach of Contract
### Against all Defendants)

33.    E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34.    Defendants contracted with E*TRADE to act as the closing agents for E*TRADE in connection with the above-specified loan transactions.

35.    Defendants, as part of their contract with E*TRADE, agreed to hold in trust the funds that E*TRADE would wire into the escrow accounts, and to disburse those funds only in accordance with E*TRADE's instructions.

36.    By failing to disburse the funds, and by converting those funds wired to defendants by E*TRADE, defendants breached their contract with E*TRADE.

37.    By reason of this breach, E*TRADE has been damaged in a sum to be proven upon trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

## SECOND CAUSE OF ACTION
### (Conversion
### Against all Defendants)

38.     E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

39.     Upon information and belief, defendants agreed to conduct the closings on the above-referenced loans for E*TRADE, while having no intention to actually close the loans according to E*TRADE's instructions.  In addition, as title agents, defendants agreed to ensure that E*TRADE's loans would not be subordinate to any other obligations.

40.     Upon information and belief, defendants thereby knowingly and intentionally misrepresented to E*TRADE that they would disburse funds as instructed, and misrepresented to E*TRADE that its loans would not be subordinate to other obligations.

41.     Defendants made these misrepresentations with the intent to induce E*TRADE into wiring funds to defendants so that they could convert those funds.

42.     E*TRADE, reasonably relied upon these material misrepresentations, wired funds to defendants to be disbursed by defendants at the loan closings.

43.     Upon information and belief, defendants as was their intention when they agreed to close the mortgages for E*TRADE, did not disburse the funds according to E*TRADE's instructions, including the disbursement of funds to pay off other mortgages on the subject properties, and thereby damaged E*TRADE in an amount to be determined upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty
### Against all Defendants)

44.     E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

1-NY/2264087.1

45.     Defendants, having undertaken to act, and having acted as, E*TRADE's closing agents in connection with the above-referenced loans, and as title agents on the same transactions, owed a duty to E*TRADE to perform their functions with the utmost degree of care, skill and diligence.

46.     Defendants breached their fiduciary duty by converting the funds that had been wired into their escrow accounts, and by not ensuring that E*TRADE's loans would not be subordinate to other obligations.

47.     Defendants breached their fiduciary duty by not redrawing dishonored checks, or checks that were never delivered to the designated payees, upon good funds.

48.     Defendants breached their fiduciary duty by failing to supervise those under their control who contributed to E*TRADE's losses, and by failing to disclose to E*TRADE that E*TRADE's funds were at risk and that the title insurance policies being placed would not protect E*TRADE from loss.

49.     These breaches of fiduciary duty were the proximate cause of E*TRADE's losses, in an amount to be determined upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

### FOURTH CAUSE OF ACTION
**(Fraud Against all Defendants)**

50.     E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

51.     Upon information and belief, defendants agreed to conduct the above loan closings for E*TRADE, while having no present intention to actually close the loans according to E*TRADE's instructions, and agreed to act as title agents while having no intention to carry out their obligations as such.

- 11 -

1-NY/2264087.1

52.    Upon information and belief, defendants thereby knowingly and intentionally misrepresented to E*TRADE that they would disburse funds as instructed, and knowingly and intentionally misrepresented to E*TRADE that E*TRADE would not be subordinate to other lenders.  In connection with each loan transaction, by accepting funds from E*TRADE, Defendants represented to E*TRADE that the funds would be used in accordance with E*TRADE's instructions.  These representations were false, and Defendants fraudulently concealed the fact that E*TRADE's funds would not be used as instructed.  Furthermore, by issuing the insurance policies, Defendants represented that the subject properties were free of encumbrances not expressly noted in the policies.  However, those representations were false, as Defendants were aware but did not disclose to E*TRADE that the prior liens encumbering the subject properties would not be paid off by the funds E*TRADE was to wire to Defendants.

53.    Defendants made these misrepresentations and omissions with the intent to induce E*TRADE into wiring funds to defendants so that they could convert those funds.

54.    E*TRADE, reasonably relying upon these material misrepresentations and without knowledge of the omitted facts, wired funds to defendants to be disbursed by Defendants at the loan closings.

55.    Upon information and belief, defendants, as was their intention when they agreed to close the loans for E*TRADE, did not disburse the funds according to E*TRADE's instructions, and thereby damaged E*TRADE in an amount to be determined upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

### FIFTH CAUSE OF ACTION
#### (Negligence Against all Defendants)

56.    E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

1-NY/2264087.1

57.     Defendants each jointly and severally owed a duty to E*TRADE to ensure that the funds entrusted to defendants for disbursement at the loan closings described herein were in fact present in the accounts upon which checks were drawn, to ensure that all necessary checks were drawn and sent to the designated payees at or immediately after closing, to ensure that title to the subject property was free and clear of other encumbrances, and to provide to E*TRADE all information known to them that might be needed by E*TRADE to protect its interests.

58.     Defendants breached this duty by not ensuring that sufficient funds were available in defendants' accounts to cover the checks drawn by defendants at the closings described herein, by failing to deliver checks to the designated payees, by failing to fulfill their obligations as title agents, and by failing to provide E*TRADE with all information known to them that might be needed by E*TRADE to protect its interests.

59.     As a proximate cause of this breach of the duty of care, E*TRADE has been damaged in an amount to be determined upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment**
**Against all Defendants)**

60.     E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

61.     Defendants, upon information and belief, all wrongfully benefited by E*TRADE's wiring of loan disbursement funds to them by enjoying portions of those funds for their own personal use.

62.     None of the defendants were the intended beneficiaries of E*TRADE's loan disbursement funds.

63.     In equity and good conscience, defendants must return E*TRADE's funds.

- 13 -

64.     As a result of this unjust enrichment, E*TRADE has been damaged in an amount to be proven upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

**SEVENTH CAUSE OF ACTION**
**(Money Had and Received**
**Against all Defendants)**

65.     E*TRADE repeats and realleges each and every one of the allegations contained in Paragraphs 1 through 32 of this Complaint as though fully set forth herein.

66.     Defendants received from E*TRADE an amount to be determined upon the trial of this matter, but believed to be no less than $2.5 million.

67.     That money should have been paid to E*TRADE's designated beneficiaries, that money still belongs to E*TRADE and E*TRADE is legally and equitably entitled to its return.

68.     It is against equity and good conscience to allow defendants to retain that money.

69.     As a result of defendants receipt and wrongful retention of these funds, E*TRADE has been damaged in an amount to be proven upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

**WHEREFORE,** E*TRADE respectfully demands judgment as follows:

1.     On all Causes of Action, joint and several damages against all defendants in an amount to be determined upon the trial of this matter, but believed to be no less than $3,007,914.65, plus prejudgment interest.

2.     An order preliminarily enjoining and restraining the transfer of any assets held by the defendants pending final judgment in this action.

- 14 -

3.      Any other relief that this Court deems just and proper, together with the costs, disbursements, and attorney's fees incurred in this action.

August 8, 2008                          **REED SMITH LLP**

                                        By:_____
                                        Wallace B. Neel (WN 0038)
                                        David E. Weiss (*admitted pro haec vice*)
                                        599 Lexington Avenue
                                        New York, New York 10022
                                        212-521-5400

                                        *Attorneys for Plaintiffs E\*TRADE Savings Bank and E\*TRADE Mortgage Corporation*

REED SMITH LLP
Wallace B. Neel (WN 0038)
David E. Weiss (*pro hac vice* application to be filed)
599 Lexington Avenue
New York, New York 10022
212-521-5400

*Attorneys for Plaintiffs E\*TRADE Savings Bank*
*and E\*TRADE Mortgage Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

E\*TRADE SAVINGS BANK; AND            :
E\*TRADE MORTGAGE CORPORATION,
                                      :   Case No. 07-CV-8065 (LTS/GWG)
              Plaintiffs,             :

      -against-                       :

FAST TRACK TITLE AGENCY LLC.;         :   **CERTIFICATE OF SERVICE**
RACHEL M. LEFF; AND RICHARD A.
LEFF,                                 :

              Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X


**WALLACE NEEL**, hereby certifies the following under penalty of perjury:

   1.  I am an associate with the firm of Reed Smith, LLP, counsel for Plaintiff M. Shanken
Communications, Inc. in this action.

   2.  On August 8, 2008, I caused to be served by First Class Mail a true and correct copy of the
attached Second Amended Complaint upon:

   **Carl M. Perri, Jr., Esq.**
   Clausen Miller, P.C.,
   One Chase Manhattan Plaza
   New York, NY 10005
   (212)-805-3900
   Fax: (212)-805-3939

   **Harvey R. Herman, Esq.**
   **Michael R. Grimm, Esq.**
   Clausen Miller P.C. (IL)
   10 South LaSalle Street

Chicago, IL 60603
(312) 606-7451
Fax: (312) 606-7777
*Attorneys for Defendant Fast Track Title Agency LLC*

**Jonathan B. Bruno, Esq.**
Kaufman, Borgeest & Ryan, LLP
99 Park Avenue
19th Floor
New York, NY 10016
(212) 980-9900
Fax: (212) 980-9291

*Attorneys for Defendant Richard A. Leff*

3.  Defendant Rachel Leff has not been served inasmuch as the action has been ordered stayed against her by order of the Court.  Notwithstanding that fact, as a courtesy I have served a copy of the attached Second Amended Complaint upon:

**Douglas J. Pick, Esq.**
PICK & ZABICKI, LLP
*dpick@picklaw.net*
369 Lexington Avenue, 12th floor
New York, New York 10017
(212) 695-6000 (ext.223)
Fax:   (212) 695-6007

*Attorney for Debtor Rachael M. Leff in*
*Bankruptcy Proceeding No. 8-07-74601-dte,*
*United States Bankruptcy Court for the Eastern District of New*
*York*

Dated: August 8, 2008
       New York, New York

WALLACE NEEL

- 2 -